### IN THE

# SUPREME COURT OF TENNESSEE

#### FOR THE

## WESTERN DIVISION.

### APRIL TERM, 1921.

MARTIN V. EXUM et ux. v. GRIFFIS NEWBERN Co. et al.

### (*Jackson, April* Term, 1921.)

1. **TRIAL.** Jury trial in case brought in chancery court obtainable only by transfer to circuit court.

Under Public Acts 1919, chapter 90, section 3, the only method whereby any party can obtain a jury trial in any cause brought in the chancery court is to have the cause transferred to the circuit court, and the only way in which such action can be had is upon the application of the defendant, who demands a jury in his first pleading, and then only in a case of which the chancery court has jurisdiction by virtue of the Acts of 1877, chapter 97. (*Post, p.* 244.)

Acts cited and construed: Acts 1919, ch. 90, sec. 3; Acts 1877, ch. 97.

Code cited and construed: Secs. 6282, 6287 (S.).

2. **EQUITY.** Chancery acquired jurisdiction of suit to set aside fraudulent conveyance under Acts 1851-52, chapter 365.

The chancery court did not acquire jurisdiction of a suit to recover $3,000 on a promissory note, where an alleged fraudulent con-

veyance was sought to be set aside, by virtue of Acts 1877, chapter 97, jurisdiction of the court to hear and determine a case of such character having been conferred by Acts 1851-62, chapter 365, carried into Code of Tennessee of 1858, at sections 4288-4295, (Shannon's Code, sections 6097-6101). (*Post, pp.* 244-246.)

Acts cited and construed: Acts 1851-52, ch. 365; Acts 1919, sec. 3.

Case cited and approved: McKeldin v. Gouldy, 91 Tenn., 677.

Code cited and construed: Secs. 4288 to 4295, (S.).

3. **CONSTITUTIONAL LAW.** Unambiguous statute cannot be given other interpretation merely to bring it within constitutional limitation.

It is the duty of the supreme court, where a statute is susceptible of two interpretations, one in harmony with and the other in violation of constitutional provisions, to give it an interpretation in harmony with the Constitution, but such principle does not authorize the court to give to an act a given interpretation merely to bring it within a constitutional limitation; where the act is unambiguous, it must be given its plain meaning, whatever the consequences as tested by the Constitution. (*Post, pp.* 246, 247.)

4. **JURY.** Constitutional guaranty does not cover cause of which chancery court has jurisdiction.

The constitutional provision that the right of trial by jury shall remain in state does not guarantee the right of trial by a jury in any cause of which the chancery court has jurisdiction, exercise according to the forms by which such courts are accustomed to administer remedies. (*Post, pp.* 247-254.)

Acts cited and construed: Acts 1845-46, ch. 122; Acts 1847-48, ch. 55.

Cases cited and approved: Miller v. Washington County, 226 S. W. 199; Castle v. Lawlor, 47 Conn., 340; Chumasero v. Potts, 2 Mont., 242; State v. Suwannee County Com'rs. 21 Fla., 19; Dutten v. Village of Hanover, 42 Ohio, St., 215; People v. Judge, 9 Cal.. 19; Goddard v. State, 10 Tenn., 96; Kirkpatrick v. State, 19 Tenn., 124.

Cases cited and distinguished: Jackson v. Nimm, 71 Tenn., 697;
 Woods v. State, 130 Tenn., 100; State v. Sexton, 121 Tenn., 35;
 Neely v. State, 63 Tenn., 174; Marler v. Wear, 117 Tenn., 244;
 McGinnis v. State, 28 Tenn., 43; Tipton v. Harris, 7 Tenn., 414.

5. JURY.  Trial. Right of trial by jury in suit to set aside fraudulent
 conveyance not guaranteed by Constitution.

In suit on a note, wherein it was sought to set aside a fraudulent
 conveyance, the case being one of an equitable nature in which the
 rights and remedies were to be worked out according to the pro-
 cedure of the chancery court, the right of trial by jury was not guar-
 teed by the Constitution, and Public Acts, 1919, chapter 90, sec-
 tion 3, abolishing jury trials in the chancery court, and having the
 effect to deny entirely jury trial in the particular case because the
 court did not have jurisdiction of the suit under Acts 1877, chapter
 97, to make the case transferable to the circuit court, is not un-
 constitutional. (*Post, p.* 254.)

---

FROM MADISON.

---

Error to the Circuit Court of Madison County.—Hon.
R. B. BAPTIST, Judge

J. T. ROTHROCK, JR., for plaintiffs.

L. L. FONVILLE and R. F. SPRAGINS, for defendant.

MR. L. D. SMITH, Special Judge, delivered the opinion
of the Court.

The correctness of the judgment of the circuit court
appealed from, by which this cause was transferred to
the chancery court of the same county depends upon the
construction and constitutionality of chapter 90 of the

Public Acts of 1919, which act undertook to abolish jury trials of the chancery court.

The cause was begun by an original bill brought in the chancery court of Madison county by *Griffis Newbern Company* v. *Martin V. Exum*, seeking to recover some $3,000 on a promissory note.

Later, and before the original bill was answered, the complainant filed an amended and supplemental bill, making Mrs. Exum a party defendant thereto, and seeking to set aside a conveyance alleged to have been made by Martin Exum to his wife fraudulently and for the purpose and with the intent of delaying and defrauding the creditors of said Martin Exum. Thereupon the Exums answered the bill, denying that there was any liability on the note by reason of the fact that it was without adequate consideration, and that the same had been paid, and denying the fraudulent execution of the deed.

In the answer the defendants to the bill demanded a jury to try the issues of fact presented therein. When the cause came on for trial the defendants entered a motion before the chancellor to transfer the cause to the circuit court of Madison county, in compliance with the provisions of chapter 90 of the Public Acts of 1919, for trial before that court and a jury. This motion was allowed, and the cause was transferred to the circuit court, and there docketed. Subsequently Martin Exum was declared a bankrupt, and T. W. Pope, his trustee, was permitted to become a party complainant.

The original complainant and trustee in bankruptcy filed and presented a motion to have the case retrans-

ferred to the chancery court, upon the ground that it had been transferred to the circuit court without authority of law. This motion was allowed, and the judgment from which the defendants have appealed to this court was pronounced, striking the cause from the docket of the circuit court and retransferring it to the chancery court.

This action of the circuit court is assigned as being error upon the ground that the cause falls within the provisions of section 3 of chapter 90 of the Acts of 1919, which requires that whenever any defendant demands a jury trial in the chancery court in any cause of which that court has jurisdiction by virtue of Acts 1877, chapter 97, the chancellor shall transfer the cause to the circuit court, where it shall be tried before the court and a jury.

The manifest purpose of the act in question was to abolish jury trials in the chancery court. The first section of the act specifically repeals those sections of the Code, carried into Shannon' Code at sections 6282 and 6287, which gives to either party to a suit in chancery the right to have a jury try and determine any material fact in dispute. Section 2 of the act provides that every party suing in the chancery court upon a cause of action which that court has jurisdiction of by virtue of chapter 97 of the Acts 1877, being an act to increase the jurisdiction of the chancery court, shall be conclusively presumed to have waived the right to demand a jury by his not having elected to sue at law, and that every defendant to any such suit shall likewise be conclusively presumed to have waived the right to a trial by a jury unless

he shall demand a jury in the first pleading filed by him. Section 3 then provides that whenever a defendant demands a jury trial in the chancery court in any cause of which that court has jurisdiction by virtue of the act of 1877 the chancellor shall transfer the cause to the circuit court of the same county, and the cause shall be docketed and tried in the circuit court before the court and a jury.

Thus it will be seen that the only method by which any party can obtain a jury trial in any cause brought in the chancery court is to have the cause transferred to the circuit court, and the only case in which such action can be had is upon the application of the defendant, who demands a jury in his first pleading, and then only in a case of which the chancery court has jurisdiction by virtue of the act of 1877.

The defendants complied with the act in so far as demanding a jury trial in their first pleading is concerned, and if the cause is one of which the chancery court had jurisdiction by virtue of the act of 1877, it was properly transferred to the circuit court, and the circuit judge acted erroneously in sending it back to the chancery court.

The chancery court did not acquire jurisdiction of this cause by virtue of the act of 1877, for the reason that jurisdiction in the chancery court to hear and determine a cause of this character had been conferred by Act 1851-52, chapter 365, carried into the Code of Tennessee at sections 4288 to 4295 (Shan. Code 6097-6101).

Section 6097 provides: ''Any creditor, without first having obtained a judgment at law, may file his bill in

chancery for himself, or for himself and other creditors, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering and dalaying creditors, and subject the property, by sale or otherwise, to the satisfaction of the debt."

Section 6100 provides: "The court has the same power and jurisdiction in all respects to set aside fraudulent conveyances and other fraudulent devices, in the cases mentioned . . . and to subject the property, by sale or otherwise, to the payment of debts, as if the creditor had obtained judgment, and execution thereon had been returned unsatisfied."

Section 6101 provides: "And, in case the complainant fails to establish, the fraud, the court shall proceed to render judgment on his claim, ascertaining the amount, when disputed, by reference to the clerk and master, or by an issue to be tried by a jury; but the plaintiff shall pay all costs, except such as are incident to taking the judgment."

Prior to the enactment of the legislation above quoted from the Code the chancery court did not have jurisdiction in a case of this kind. *McKeldin* v. *Gouldy,* 91 Tenn., 677, 20 S. W., 231.

The jurisdiction of the chancery court having been conferred upon it prior to, and entirely independent of, the act of 1877, it is clear that the case does not fall within the provision of section 3 of the act of 1919; and that there is no provision in that act which authorized the chancellor to transfer this cause to the circuit court. His action in doing so was erroneous, and it was the duty of the circuit judge, when the matter was called

to his attention by proper motion, as was done in this cause, to retransfer the case to the chancery court.

But it is argued that, inasmuch as no jury trial could be had in the chancery court, this interpretation of the act of 1919 has the effect to deprive the defendant of a jury trial, guaranteed to him under the provisions of section 6 of article 1 of the Constitution. It is said that this cause combines both a legal and an equitable remedy; that the action on the note is strictly one at law, while the effort to set aside the fraudulent conveyance is an equitable proceeding, and that the act in question is susceptible of an interpretation which would authorize a jury trial, and thus avoid the unconstitutionality of the law.

This contention overlooks the provision of the act which clearly limits the right to a transfer of the cause for a jury trial in the circuit court to that class of cases of which the chancery court has jurisdiction by virtue of the act of 1877, and that the present cause falls within the jurisdiction of the chancery court by virtue of an act passed prior to the act of 1877. It also overlooks the manifest purpose of the act, by repealing all laws granting a jury trial in the chancery court and the transfer of the limited class of cases to the circuit court to entirely abolish jury trials in the chancery court.

It is the duty of this court, where a statute is susceptiable of two interpretations, one in harmony with, and the other in violation of, constitutional provisions, to give it that interpretation in harmony with the Constitution. But this principle does not authorize the court to give to an act an interpretation merely to bring it within the

constitutional limitation. Where the act is unambiguous and susceptible of only one interpretation, it must be given that construction, whatever the consequences may be when tested by the Constitution.

The act clearly does not authorize the transfer of a cause of this character from the chancery to the circuit court. Whether it is constitutional or not is another question.

If the act be unconstitutional, then there would be no color of authority for the transfer of this case to the circuit court, so that in either event the circuit judge acted properly in transferring the case back to the chancery court.

Does the act of 1919 violate the constitutional provision to the effect that the right of trial by a jury shall remain inviolate? It is well settled that this constitutional provision does not guarantee a jury trial in every case presenting disputed issues of fact. It does not give the right of trial by a jury in any case where the right did not exist at the time of the adoption of the constitutional provision, nor does it insure a jury trial except in that class of cases in which the right existed and was in force and use according to the course of the common law. This has been so frequently stated by our courts as to become almost axiomatic. This proposition being sound, it follows that the constitutional provision does not guarantee the right of trial by a jury in any cause of which the chancery court has jurisdiction, which is exercised according to the forms by which such courts are accustomed to administer remedies.

It is true that common-law courts had exclusive juris-
diction prior to the acts of 1851-52, to hear and determine
the liability of the maker of a note and to collect the
same; and that the chancery court prior to that act had
no jurisdiction whatever in a case of this kind. But the
act of 1851-52 constituted a proceeding of this sort an
equitable one, as fully as if it had originally inhered in
the court, and the rights and remedies of the parties
were to be worked out according to the forms and methods
of procedure which a court of equity customarily pursues.

The case of *Jackson* v. *Nimmo*, 3 Lea, 597, involved the
constitutionality of the act of 1877, enjoining the juris-
diction of chancery courts. It was urged that that act
was unconstitutional, because that in conferring juris-
diction on the chancery court of legal actions, the right
of trial by a jury was impaired. In denying that con-
tention the court said, among other things:

"Several conclusive answers may be given to this.
First, if the power to enlarge and alter the jurisdiction
is given in the Constitution, whenever it is rightfully
conferred on the chancery courts, then that jurisdiction
may be exercised according to the forms by which such
courts are accustomed to administer remedies. This
article in the Bill of Rights was never understood to
apply to the administration of the law in such courts,
and it has been held so in many other cases, such as
formerly in cases of bastardy."

It is true that in that case the contention that the act
of 1877 was unconstitutional was denied upon the further
ground; That the act did not deny a jury trial, because
under the act of 1846 (Laws 1845-46, chapter 122) a

party could have a jury trial in the chancery court. But this reasoning of the court does not impair the soundness of the principles previously stated, that the constitutional provision was never understood to apply to the administration of the law in chancery courts.

Other cases in which this court has held that the constitutional provision applied only to that class of cases where the right existed independently of the Constitution are:

*Miller* v. *Washington County*, 226 S. W., 199, decided at the last session of the court at Knoxville, opinion not yet (officially) published. This was an action by solicitors, representing Washington county, to recover a fee for legal services performed in connection with litigation growing out of the issuance of county bonds, and to appropriate funds from the proceeds of the bonds for the payment of said fee. It was held in that case that this was a cause falling within the equitable jurisdiction of the court, upon the theory that it was against the trustees of a trust fund, and sought to have a sufficiency of said funds in the hands of the trustee appropriated to the satisfaction of complainant's claim for legal services. The question came before the court upon exceptions to the action of the chancellor in refusing to allow the defendant a jury trial. It was held in that case that the constitutional provision invoked here had no application to a case of that kind. The court said:

"The constitutional provision that 'the right of trial by jury shall remain inviolate' (article 1, section 6) has no reference to suits brought in the chancery courts, but refers alone to actions triable at common law."

*Woods* v. *State,* 130 Tenn., 100, 169 S. W., 558, L. R. A., 1915F, 531. That case involved the constitutionality of what is known as the indeterminate sentence law, chapter 8 of the Acts of 1913. Its constitutionality was attacked upon the ground that it violated section 6, article 1, of the Constitution. With respect to this provision the court said:

"This means that it must be preserved as it existed at common law."

*State* v. *Sexton,* 121 Tenn., 35, 114 S. W., 494. This was a proceeding in the name of the State for a violation of the game law. The game law provided that a person arrested for violation of the law should be taken before a justice of the peace who, after hearing the evidence, would decide the case and impose the fine fixed by law, and gave a right of appeal to the criminal or circuit court. The constitutionality of the act was challenged upon the ground that it violated the defendant's right of trial by a jury. The court denied the contention, stating:

"The act of 1907 does not violate the guaranty of the Bill of Rights that the right of trial by a jury shall remain inviolate. This provision of the Bill of Rights has been uniformly construed to protect the right of a jury trial as it existed at common law."

*Neely* v. *State,* 4 Baxt., 174. This case involved the constitutionality of the act which undertook to provide for taxing fees of jurors against losing parties, chapter 7 of the Acts of 1875. One Neely, who was summoned as a juror, declined to serve, and thereupon the circuit judge imposed upon him a fine. He resisted it upon the ground, among others, that the act violated the constitutional

provision guaranteeing the right of trial by a jury.  The court in denying the contention said:

"The settled meaning of this provision of the constitution is that the right of trial by jury shall remain inviolate, as it existed at common law at the time of the formation of the constitution."

*Marler* v. *Wear,* 117 Tenn., 244, 96 S. W., 447.  This was a mandamus proceeding to compel school directors to issue a warrant to a school-teacher. The school directors demanded a jury trial. The court held they were not entitled to it.  The court said:

"While our constitution declares that 'the right of trial by jury shall remain inviolate,'  .  .  .  yet it has been held, too often to need citation of authorities here, that the purpose of this provision was to protect the right as it existed at common law.  But at common law no jury was impaneled in mandamus cases, since the  return was  treated  as  conclusive.  . *Castle* v. *Lawlor,* 47 Conn., 340; *Chumasero* v. *Potts,* 2 Mont., 242; *State* v. *Suwannee County Com'rs,* 21 Fla., 19; *Dutten* v. *Village of Hanover,* 42 Ohio St., 215; *People* v. *Judge,* 9 Col., 19."

*MiGinnis* v. *State,* 9 Humph., 43, 49 Am. Dec., 697. This was a conviction for assault and battery.  On the trial the defendant pleaded a former conviction by a justice of the peace, proceeding under an act passed in 1848 (Acts 1847-48, chapter 55), authorizing the justice of the peace to inflict punishment in cases of small offenses. The attorney general contended that this act was unconstitutional, and in violation of section 6, article 1.  In denying this contention the court said:

"We are inclined to the opinion that the sixth and four-teenth sections of the Declaration of Rights were merely designed to secure the mode of prosecution, in cases of felony, and of the trial by jury, as they respectively existed at the common law. The fact that the practice had been, in North Carolina, and has continued to be in this State, to prosecute misdemeanors, not upon informa-tion, but by presentment or indictment, weighs nothing in settling the true meaning of the constitutional provi-sion in question; because the object of this provision was not to forbid the prosecution of misdemeanors by the finding of an indictment or presentment by a grand jury, nor does it forbid this, but to guarantee to every freeman the great privilege and security of not being put to answer any criminal charge, affecting the right to life or liberty, without a written accusation, previously verified by the oath of a grand jury, in the form of a presentment or indictment."

*Goddard* v. *State,* 2 Yerg., 96. This was a bastardy proceeding, in which the accused demanded a jury trial, and he complained of the action of the court in denying him a jury. It was held that this provision of the con-stitution had no reference to a proceeding of this sort.

*Kirkpatric* v. *State,* Meigs., 124. This was a bastardy case, in which the accused was denied a jury trial, and he relied upon section 6, article 1. It was held, as in other cases of similar character, the constitutional provision did not apply in a case of this kind.

*Tipton* v. *Harris,* Peck., 414. This was a summary pro-ceeding on an official bond. The court, after expatiating the virtues of this provision of the constitution, said:

"But in cases where the trial by jury is not so necessary to the welfare of the citizen, and may be dispensed with without endangering his independence or safety, then the legislature is left free to choose the course most suitable to existing circumstances; and, like other legislatures, ours may exercise its judgment in the adoption of modes of trial best suited to the subject. In matters not heretofore tried by jury, such as matters of equity or of ecclesiastical jurisdiction, which experience showed might be safely left with a judge, the legislature may regulate them according to its discretion, for what temptation could it have to choose modes which were not the best for the people. Improvements in science and change of circumstances might render new modes more eligible than the old ones, and it were unwise so to shackle the legislature that it could not use the lights which experience in its progress might discover. In all instances, the discernment and the patriotism of the legislature are relied on by our constitution, except in those which were of too much value and importance to be left to human discretion. In all instances, therefore where the legislature has prescribed a proceeding by motion to obtain judgment for moneys due from public or private delinquents, where the judgment to be pronounced will not directly or immediately affect the individual rights and privileges secured to the citizens by the articles and sections under consideration, the trial of facts may be without the intervention of a jury, if such be the meaning and intent of the law which it makes."

This case being one of an equitable nature in which the rights and remedies are to be worked out according to the prodecure of the chancery court, the right of trial by jury is not guaranteed by the constitutional provision invoked, as is evident from the long line of decisions referred to. Whatever may be said in favor of applying this constitutional provision to a case like the one at bar, as an original proposition, we would not feel warranted in departing from the precedents which have so long obtained.

It follows that there was no error in the action of the circuit court, and the cause will be remanded to the chancery court of Madison county for further proceedings in accordance with this opinion. The appellants will pay all the costs of the appeal.