GREENE COUNTY UNION BANK v. MILLER et al.—75 S. W. (2d) 49.

Eastern Section. April 28, 1934.

Petition for Certiorari denied by Supreme Court, October 13, 1934.

Swingle & Hardin, of Greeneville, for complainant.

Divine & Guinn, of Johnson City, for defendant Mrs. Frank E. Miller.

DeWITT, J. This cause on appeal presents a controversy between the complainants, Greene County Union Bank and P. C. Wakefield, and the defendant, Mrs. Frank E. Miller, as to indebtedness claimed against her upon certain promissory notes. Mrs. Miller is the wife of her codefendant R. D. Miller, who was also sued upon all of these notes but one and upon other notes executed by him. He admitted the execution of every note sued on, on which his name appeared either as maker, surety, or indorser, and the chancellor awarded against him a recovery on all of these notes. It appears without dispute that he is insolvent and has no property subject to execution.

The chancellor dismissed a cross-bill filed by Mrs. Miller, overruled her pleas and her exceptions to testimony, and awarded re-

coveries against her in favor of the Greene County Union Bank as follows:

$2,496.96, including interest and attorney's fee, upon a note dated April 20, 1931, of which she was comaker with her husband for $1,994.79, as the balance of a debt secured by their deed of trust of November 26, 1929, to a house and lot in Greeneville. A sale of said property was decreed for the satisfaction of said note. $770.78, including interest and attorney's fee, as the amount due upon a note dated February 9, 1931, for $617.52, signed by Miller Fuel Company and R. D. Miller and upon which Mrs. Miller was indorser.

The chancellor also awarded a recovery of $242.93, including interest and attorney's fee, against Mrs. Miller, in favor of the Greene County Union Bank for the use and benefit of P. C. Wakefield, upon a note executed solely by Mrs. Miller dated May 27, 1931, in renewal of a note for $218.92 dated November 27, 1930, secured by pledge of five shares of the capital stock of the Greene County Bank. A payment of $26.26 was made thereon on November 27, 1930, so that the correct balance as of that date was $192.66; and the chancellor also found that this was subject to a credit of $4.38 for usury charged upon said note. After these credits were applied and interest and attorney's fee added, the amount found to be due was the aforesaid sum of $242.93. The chancellor decreed a sale of the five shares of bank stock for the satisfaction of this recovery so awarded.

All of the notes upon which Mrs. Miller was sued, excepting this last-mentioned one, were made payable to the order of the Greene County Bank. All of the notes upon which R. D. Miller was separately sued were made payable to the order of the Union Bank & Trust Company of Greeneville. In June, 1931, these banks were lawfully merged under the name of Greene County Union Bank, and, under said merger, all of these notes became the property of the Greene County Union Bank.

The note of Mrs. Miller, originally for $218.92, was for money borrowed of P. C. Wakefield by her, and was made payable to his order. He is president of the Greene County Union Bank. He sold and transferred this note, indorsing the same, to that bank before the institution of this suit; but thereafter he paid to the bank the amount of the note, upon demand made because the note was long overdue. By amendment to the bill, he was allowed to become a party complainant so as to seek the recovery which was awarded for his use and benefit upon this note as aforesaid.

From the decree of the chancery court, Mrs. Frank E. Miller has appealed and assigned errors. The first assignment is that the chancellor erred in denying to her the right of trial by jury.

244

In her cross-bill Mrs. Miller demanded a jury to try the issues in the cause. Issues were tendered by her and her husband as cross-complainants, and issues were also tendered by the Greene County Union Bank. Certain of these issues were approved by the chancellor, and others were eliminated as immaterial or not determinative. At this juncture, the complainant bank moved to deny the application or demand for a jury, upon the ground that the cause involved the determination of matters inherently equitable, complicated accounts, etc., and, after argument, the court sustained said motion and disallowed the demand for trial by jury, refusing to submit the case to a jury. The cause was then continued, remanded to the rules for proof, proof in the form of depositions was taken and filed, and the cause was heard and tried by the chancellor, with the result hereinbefore set forth.

 Article 1, section 6, of the Constitution of Tennessee provides that the right of trial by jury shall remain inviolate. However, it is well settled in this state that there is no absolute right to a trial by jury in a suit of which the chancery court has inherent, equitable jurisdiction, but the submission of facts to a jury in such a case has been a matter within the discretion of the chancellor. This provision of the Constitution as to jury trials refers not to suits brought in chancery, but alone to actions triable at common law. Miller v. Washington County, 143 Tenn., 488, 226 S. W., 199; Exum v. Griffis Newbern Co., 144 Tenn., 239, 230 S. W., 601. The right to a trial by jury in chancery arises under our statute which, as set forth in section 10574 of the Code, is as follows:

"Either party to a suit in chancery is entitled, upon application, to a jury to try and determine any material fact in dispute, save in cases involving complicated accounting, as to such accounting, and those elsewhere excepted by law or by provisions of this Code, and all the issues of fact in any proper case shall be submitted to one jury."

 The court of chancery has inherent jurisdiction in equity over a suit for accounting, a suit involving claims and counterclaims, where the accounts are too complicated to be dealt with in a court of law. Gibson's Suits in Chancery, sec. 953; Taylor v. Tompkins, 2 Heisk., 89.

 In such case, the question as to the absolute right of a party to a trial by jury is for the chancellor to determine from the pleadings, whether or not the case involves complicated accounting. If it is a case for complicated accounting, such party has no right to demand or have a trial by jury. The foundation of jurisdiction in equity in a case of complicated accounts is based upon the inadequacy of the legal remedy, as where there is an embarrassment in making proof, the necessity for a discovery, or the production

of books and papers, or where it would be difficult, if not impossible, for a jury to unravel the numerous transactions involved, and justice could not be done except by employing the methods of investigation peculiar to courts of equity. It is well settled that where the accounts are complicated this constitutes of itself sufficient ground for the assumption of jurisdiction by a court of equity, and where the account is made up of items for and against each party, or the items are numerous and extend over a long period of time. 1 C. J., 618, 619; Taylor v. Tompkins, supra. No hard and fast rule can be laid down as to what constitutes such a complexity of accounts as to authorize a court of equity to assume jurisdiction; each case seems to stand upon its own facts. 1 C. J., 620, and cases cited.

As has been stated, the suit against Mrs. Miller was brought upon three promissory notes. To the note for $1,994.79, she pleaded non est factum as to all above the sum of $800, averring that she was deceived, defrauded, misled, and imposed upon into signing the note believing that it was merely a renewal of a note for $800. She prayed that said note be reformed. As to the note for $218.92, she defended upon averments that the bank had wrongfully claimed that it was entitled to apply the proceeds of the security therefor to any other indebtedness which she might owe the bank, and that by refusing to accept payment of the note, the bank had been guilty of a conversion of the shares of stock held as collateral therefor; and she prayed for a decree against the bank for the sum of $1,400 as the value of the five shares of stock, as of the date of the alleged conversion. As to the note for $617.52, she did not deny her obligation, but averred "that she is only, if at all, or if bound at all, the accommodation endorser and surety of R. D. Miller, and that she has all the rights of subrogation and is entitled to the application of all the rules of equity with reference to this entire matter that would arise out of that fact." Mr. and Mrs. Miller also prayed for a reference to ascertain damages alleged to have been suffered by them from the issuance and service of an injunction under the original bill restraining them from conveying or encumbering their property. This injunction was awarded upon the filing of the bill.

The charges of fraud, coercion, and imposition made in the answer and cross-bill and relief prayed for based thereon, and the relief sought by the complainant in the original bill, to have the property sold for the enforcement of the mortgage deed of trust, presented additional matters of equitable jurisdiction.

In view of all these matters, we are of the opinion that the pleadings presented a case for complicated accounting fairly within the meaning of the aforesaid section 10574 of the Code, and that

therefore it was not error for the chancellor to refuse to submit any of the issues to a jury. The first assignment of error is overruled.

The second assignment of error is as follows:

"It was error for the learned Chancellor to hold that the complainant Bank had not been guilty of the conversion of the five shares of stock of the Greene County Bank, hypothecated as collateral to the note of $218.92, payable to P. C. Wakefield, being one of the notes sued on, upon being tendered the amount thereof, and declined upon the ground that it is and was entitled to further hold the same as security and assets, to pay off other notes held by it, signed by Frank E. Miller or endorsed by her."

It is true that in the original bill the complainant averred that it had the right to ask that said bank stock be sold by the court, and that the proceeds of same, after the satisfaction of said $218.92 note, be applied on any other note referred to in the bill executed by Mrs. Frank E. Miller. However, this claim was subsequently abandoned in the course of the litigation. The decree upon this note was in favor of P. C. Wakefield, who, as aforesaid, after the bill was filed, became again the owner of the note with a right to the collateral security. The claim of conversion is based upon the fact that a short time after the original bill was filed, Mrs. Miller, with her counsel, came to the complainant bank and had a conversation with P. C. Wakefield, its president, without giving any notice to counsel for the bank, in whose hands the notes had been placed for collection and who had filed the original bill, and who had no knowledge of the visit of Mrs. Miller and her counsel. Her counsel testified that in the conversation with Mr. Wakefield he offered to pay all that was due on that note if it would be surrendered to Mrs. Miller. There is no evidence that any money was actually tendered. He says that Mr. Wakefield declined to accept payment of the note on the ground that the Greene County Bank could hold the shares of stock for other indebtedness against her held by the bank. Mr. Wakefield testified that he declined on the ground that the note was in the hands of the attorney for the bank and had been sued upon and she would have to settle with the attorneys. There is no evidence that Mrs. Miller or her counsel offered to pay any part of the court costs which had accrued. She and her counsel knew that the bill had been filed. This evidence does not show that there was a conversion of the bank stock. Before there can be a conversion, there must be a proper tender of the amount actually due. The rule is that where a creditor holds securities as collateral for several items of indebtedness (which this note included), a tender by the debtor which does not include all such items does not operate to release the securities. Fourth Nat. Bank v. Stahlman, 132 Tenn., 367, 178 S. W., 942, L. R. A. 1916A,

568. In order to support the averment of a tender of money, it is necessary for a party to show that the precise sum or sums was actually produced and offered to him to whom it is to be paid. Farnsworth v. Howard, 1 Cold., 216; Alloway v. City of Nashville, 88 Tenn., 510, 13 S. W., 123, 8 L. R. A., 123; Sinard v. Harris, 2 Tenn. Civ. App. (2 Higgins), 486.

The chancellor was not in error in holding that proper tender of the amount due on said note had not been made, and that therefore there had been no conversion of the bank stock. The second assignment of error is overruled.

 The third assignment of error is as follows:

"It was error for the Court upon the face of the bill, and it is error now to maintain an injunction and no relief is available to the appellant Bank for the purpose of keeping in force an injunction, because of the testimony of this witness, equivocal and evasive, just above stated, when pressed to put his finger upon a single thing in the least wrong."

The witness referred to in this assignment was Mr. P. C. Wakefield. In the brief of counsel no argument is made under this assignment in support thereof. We think the bill contains averments as a basis for an injunction, upon which the chancellor, in order to maintain the status quo of the property, could lawfully and properly grant an injunction and maintain it in force during the pendency of the cause in his court. In the bill it was averred that R. D. Miller was hopelessly insolvent; that there were unsatisfied judgments outstanding against him; that Mrs. F. E. Miller had been rendered insolvent due to the decline in real estate values and the increased amount due by her for street paving and taxes and other indebtedness for which she was liable; and that unless they be enjoined from disposing of, or in any wise encumbering the property described in the bill, there was great danger of the complainant's claims against them being jeopardized and lost, as they had no other properties whatsoever so far as complainant knew, which could be reached for the satisfaction of the indebtedness due complainant, and they were involved financially very heavily and were making no effort to liquidate their indebtedness. There was no averment in the original bill that they were about fraudulently to encumber or dispose of their property.

In the amendment to the bill filed in May, 1933, it was averred that Mr. and Mrs. Miller, shortly before the institution of this suit, endeavored to obtain a loan of $2,000 on the house and lot covered by their deed of trust, but they were not going to undertake to get any more money on the property and they would not pay more than an amount which, with interest when paid, would leave approximately $830 and some interest due on the $1,994 note, which

was secured by the deed of trust of November, 1929. It was also averred that since the filing of the original bill, Mrs. Miller had permitted two judgments to be obtained against her which were unsatisfied; and that she and Mr. Miller had executed and caused to be registered a chattel mortgage to secure a note for $500 payable to their counsel. It was averred that complainant verily believed that should said injunction theretofore granted be dissolved, said defendants would fraudulently dispose of the real estate owned by Mrs. Miller described in the original bill, to the detriment of complainant.

The evidence heard by the chancellor shows that these averments as to the status of the property, the judgments, taxes, paving assessments, effort to borrow $2,000 with a refusal to offer to pay the $1,994 note, were true. Upon the hearing, the chancellor dissolved the injunction. This is made the subject of an assignment of error in behalf of the complainant bank, and which will be treated later in the course of this opinion. The third assignment of error is overruled.

The fourth, fifth, and eighth assignments of error are as follows:

No. 4: "The Court erred in overruling and disallowing the cross-complainant Frank E. Miller's plea of non est factum to the note of $1,994.79, and in refusing to hold that said note was without consideration as to her, and in refusing to hold that the same was extorted from her, even if the same was in fact signed by her, which is challenged by fraud, misrepresentation, intimidation, fraudulent pursuit and deceit."

No. 5: "It was error for the Court to refuse the ground and prayer and relief of the cross-bill to retire said note of $1,994.79, and cut the same down to a note, or make the same obligatory only against the cross-complainant Frank E. Miller to the extent of $800."

No. 8: "It was error to render a personal judgment against the defendant and cross-complainant Frank E. Miller as to the $1,994.79 note for which real estate was hypothecated in trust, because it is expressly testified and undenied that Frank E. Miller joined in this trust deed upon the representation singly and alone to convey whatever she had in the individual property of R. D. Miller, and the contract having been executed with express reference to this real estate in connection with that deed, it was mandatory that the property be first disposed of, and secondly, that if any judgment for a deficiency could be taken against her, which is denied and assailed, it was improper for the Court to so hold or render a decree; in the alternative, and at most it could only be to the extent of a deficiency and not otherwise."

■ There is no merit in the contention that Mrs. Miller is not liable because said note was without consideration as to her. It is well settled that a married woman may bind herself personally on a promissory note for the accommodation of her husband, and that she may validly encumber her own property to secure his debts.

■ ■ In her testimony Mrs. Miller admitted that she signed the note for $1,994.79, but claimed that she did not know that it was for that amount and that she was misled into believing that she was signing a note for $800. The charges of "fraud, misrepresentation, intimidation, fraudulent pursuit and deceit," made in her behalf, are not sustained by the evidence. There is no evidence that Mrs. Miller signed this note in blank and that it was later filled out by some one else. The evidence shows that her husband brought it to her with the request that she sign it. He was, of course, not acting as agent for the bank in so doing, as is claimed. It would be a dangerous rule to hold that a person, even a distressed woman, could be allowed to avoid such an obligation by swearing that she thought it was an $800 note when the note for $1,994.79 was plainly before her and she was looking at it when she signed it. Back of this is the fact that on November 26, 1929, Mr. and Mrs. Miller executed and delivered a deed of trust to P. C. Wakefield, trustee to the property herein involved, reciting as follows:

"This conveyance is made for the following purposes and none other, that is to say, we are indebted to the Greene County Bank of Greeneville, Tennessee in the sum of Twenty-nine Hundred Sixteen Dollars and Fifty-eight cents ($2,916.58), evidenced by our promissory note for said amount of even date herewith, due and payable six months after date, and providing for ten percent (10%) attorney's fees if not paid in accordance with its terms, and if placed in the hands of an attorney for collection, and being desirous of securing said note, and any and all renewals thereof which may be permitted by the holder of same, this sale is made."

■ The evidence shows that the note so recited and signed by Mrs. Miller was a consolidation of five previous notes which had been executed by them for moneys borrowed from said bank; and that by April 20, 1931, the balance due on said debt was $1,994.79, for which the note sued on in this cause was given. Plainly this was not a novation but merely a renewal of the balance due on the note of November, 1929, secured by the deed of trust.

■ ■ Therefore, the evidence did not justify any reformation of this note. The chancellor did not err in awarding a recovery thereon against Mrs. Miller. She was, of course, personally liable on said note. There is no merit in the insistence that she joined in the deed of trust merely to convey her marital rights in the property, neither is there any substantial evidence that she thought

so. This property was her own property, having been inherited by her from her father. She cannot be heard to say that when she, joined by her husband, conveyed it in trust to the trustee to secure the indebtedness, she thought that she was merely conveying what interest she had in the property of her husband. Of course it was proper for the chancellor to render a judgment against Mr. and Mrs. Miller on this note, to declare it a lien upon this property under the provisions of the deed of trust, and to provide for a sale of the property for the satisfaction thereof. The proceeds of such sale must be credited upon the judgment if they are sufficient to satisfy it in full, and if it is insufficient, the balance remaining after credit applied would constitute the deficiency. It requires no citation of authorities to support these propositions.

For these reasons, the fourth, fifth, and eighth assignments of error are overruled.

The sixth assignment of error complains of the action of the chancellor in overruling exceptions to testimony. A vast number of such exceptions were taken. In this court these exceptions are still insisted upon. We have carefully gone over them in detail and we find that they deal with matters immaterial and not determinative of the issues in this cause, for the most part, and where they are at all material the testimony involved was admissible. It would extend this opinion to an interminable length and it is unnecessary to set forth and discuss all of these exceptions seriatim. If all of these exceptions were sustained, the evidence not excepted to would be sufficient to warrant the decree which has been appealed from. We therefore overrule the sixth assignment of error.

The seventh assignment challenges the provision of the decree taxing Mrs. Frank E. Miller with the costs of the cause and with attorney's fees upon all the notes sued on. In view of our concurrence with the chancellor in his conclusions upon the facts and in his award of the recoveries upon these notes, we see no abuse of his discretion in the taxation of the costs. The seventh assignment of error is overruled.

This disposes of all the assignments of error made in behalf of the appellant Mrs. Frank E. Miller. We have not been unmindful at all of the grievous hardship which this decree works upon her. She is a sufferer from the financial misfortunes of her husband and her faithful loyalty to him to the extent of becoming liable for debts of his and incurring the possible loss even of her home on account thereof. But the court has a stern duty to accord to the creditor its rights and the exercise of its remedies, even though a good woman must suffer thereby.

The Greene County Union Bank appealed from certain portions of the decree and has assigned three errors. The first is that the

court erred in dissolving the injunction and failing to declare a lien upon the property of Mrs. Frank E. Miller for the purpose of satisfying the decree against her. The decree preserves the lien on the real property and the shares of stock. A judgment is a lien on land of the judgment debtor for the period of one year, provided an execution is taken out and the land sold within twelve months after the rendition of the judgment. Code, sections 8043, 8045. It may be made a lien on an equitable estate upon compliance with sections 8047 and 8049 of the Code.

There was no attachment in this cause. No application, under section 10552 of the Code, has been made to any judge of this court for continuance of the injunction in force.

We do not see any substantial ground for holding that the chancellor erred in dissolving the injunction. Complainants' second assignment is that ''there was no proper plea of usury under the law, and no allowance or deduction of interest should have been made on such account; nor should any part of the costs be taxed to complainants.''

Very small items are involved in this assignment. The amount of the usury is $4.38. We do not find that usury was regularly pleaded to the note for $218.92, but it was averred in the answer that the note was subject to certain credits. We are not willing to disturb this deduction for usury since it plainly appears that it would be a proper deduction.

The provision as to costs complained of is that complainant Greene County Union Bank be taxed with such part of the costs as is incident to and properly chargeable to the suit on the note for $218.92, not to include the expense in connection with the advertising and sale of the security and handling of execution thereof.

This was a matter within the sound discretion of the chancellor, and we think that he has not abused his discretion. Evidently he considered the usurious charge and the failure at first, though inadvertent, to apply the credit of $26.26 on the note; and also the transfer of the note pending the suit, necessitating an amendment to the bill, etc.

The complainants' third assignment is that it was error to allow Mrs. Miller to perfect her appeal upon her oath in forma pauperis.

The chancellor granted her appeal upon her giving bond ''or otherwise complying with the law.'' The same decree recites a special appeal taken by the complainants, and the allowance to Mrs. Miller of the right so to perfect her appeal was not made a ground of appeal by the complainants. It is evident that the chancellor considered that the judgments rendered had so affected the status

of Mrs. Miller's property that she would most probably be unable to procure any surety for an appeal bond. The right of appeal in forma pauperis is preserved in our very statutes requiring bond, to be given, even for the whole debt, damages, and costs. Code, sections 9043, 9047. This assignment of error is therefore overruled.

All of the assignments of error having been overruled, the decree of the chancery court is affirmed. A decree will be entered in this court in accordance with the decree below, but interest will be computed upon the notes sued on straight from the dates from which interest was computed in that court.

The costs of the appeals will be adjudged, one-fifth against the Greene County Union Bank and the surety on its appeal bond, and the other four-fifths against Mrs. Frank E. Miller.

The cause will be remanded to the chancery court of Greene county for execution of the decree.

Crownover, J., concurs fully.

Faw, P. J., dissents from the ruling that defendant Mrs. Miller was not entitled to a trial of the issues of fact by a jury—being of the opinion that there were issues of fact separable from the matters of complicated accounting, and, as to such distinct issues of fact, Mrs. Miller was entitled to a jury trial.