IN THE COURT OF APPEALS

AT KNOXVILLE

FILED

**October 20, 1998**

Cecil Crowson, Jr.
**Appellate Court Clerk**



MIKE MIERZEJEWSKI and
FURNITURE PARTNERS, INC.,

        Plaintiffs-Appellants,

v.

BS ENTERPRISES, INC., and
BELINDA SHATZER d/b/a T. J.
BAKER'S FURNITURE,

        Defendants-Appellees.

) C/A NO. 03A01-9802-CH-00044
)
)
)
)
)
)
) APPEAL AS OF RIGHT FROM THE
) HAMILTON COUNTY CHANCERY COURT
)
)
)
)
)
) HONORABLE R. VANN OWENS,
) CHANCELLOR


For Appellants

FRED T. HANZELIK
BRENT JAMES
Hanzelik & James
Chattanooga, Tennessee

For Appellees

ELIZABETH G. ALT
WILLIAM T. ALT
William T. Alt, P.C.
Chattanooga, Tennessee


O P I N I O N



AFFIRMED AND REMANDED

Susano, J.

This suit in chancery was filed by Furniture Partners, Inc., against T. J. Baker's Furniture.[1]  It arises out of a failed business relationship.  The complaint asked the trial court to issue a "writ of replevy" for items of furniture and a temporary restraining order (TRO).  After granting the TRO, the Chancellor referred the issues made by the pleadings to a master. Following the trial court's receipt of the master's report, the plaintiff filed an answer to the defendant's counterclaim, in which answer the plaintiff requested a trial by jury.  The court denied the plaintiff's request for a jury trial; confirmed the master's report; and entered a judgment for $39,916.36 on the defendant's counterclaim.  The plaintiff appealed, contending, in its sole issue, that it is entitled to a jury trial pursuant to the authority of Article I, Section 6, of the Tennessee Constitution[2] and T.C.A. § 21-1-103.[3]

---

[1]The style of the various pleadings and orders below reflects multiple individuals/entities as the parties to this litigation; however, since this is essentially a contest between two companies -- Furniture Partners, Inc. and T. J. Baker's Furniture -- we will refer to the parties as plaintiff and defendant.

[2]Article I, Section 6, of the Tennessee Constitution provides, in pertinent part, "[t]hat the right of trial by jury shall remain inviolate."

[3]T.C.A. § 21-1-103 provides as follows:

> Either party to a suit in chancery is entitled, upon application, to a jury to try and determine any material fact in dispute, save in cases involving complicated accounting, as to such accounting, and those elsewhere excepted by law or by provisions of this Code, and all the issues of fact in any proper cases shall be submitted to one (1) jury.

## I.  *Facts*


The defendant planned to conduct a going-out-of-business furniture sale.[4]  It engaged the services of the plaintiff to "manage and oversee" the sale.  The plaintiff apparently held itself out as possessing expertise in such sales. While each of the parties placed furniture in the sale, the plaintiff was primarily responsible for securing the furniture to be sold.  According to the original terms of the parties' agreement, as furniture was sold, the defendant was to pay the vendor's invoice price and expenses of the sale, plus a sales commission to the plaintiff.  The defendant would be entitled to the balance of the sales proceeds.  The defendant would also be entitled to the revenues from the sales of its own furniture, less the same percentage sales commission to the plaintiff and expenses of the sale.

The terms of the contract were altered during the course of the business relationship.  The record indicates that the plaintiff requested that the defendant pay for the furniture in advance, rather than upon receipt of the sales proceeds as originally agreed to.  This is reflected in the testimony of the owner of the defendant business:

> Q: As a result of the selling of furniture, were their arrangements made as to how you would compensate Furniture Partners for the furniture?
>
> A: Yes.

---

[4]While it is clear that the defendant was conducting a going-out-of-business sale, it is less clear that the defendant was in fact going out of business.

Q: How was that done?

A: The arrangements were, as the money came in and the invoices became due, we would settle up in that manner, was what the original understanding was.

Q: And did that understanding -- is that how you operated the sales during the period of time that this contract was in existence?

A: That was not what was done.

Q: What was done?

A: It was supposed to be that way, but we ended up -- he was demanding the money and having my manager write checks for the invoices up front in many cases, of which we have several falling-outs there as he was doing that. So therefore, we weren't being able to sell it on a consignment basis as we agreed.

Q: When you say you were paying the money up front, what do you mean by that?

A: Well, there were several invoices. When they first opened up the sale, I was in New York. He had my manager write checks to these vendors [sic] just right off the bat. If I could have done that I would not have needed to hire him and his company to bring it in and sell it on consignment.

\* \* \*

Relations between the parties deteriorated after the parties further modified their contract to decrease the plaintiff's sales commission percentage and provide for a joint checking account.[5] Dealings between the parties further soured when the City of Chattanooga notified the defendant that the going-out-of-business sale had to be completed earlier than originally scheduled. The plaintiff was upset about the change

---

[5]The original contract provided for a checking account with plaintiff as the sole signatory. The contract was then modified in writing to require the signatures of both parties on all checks.

4

in the ending date of the sale, and became concerned that the defendant would sell the plaintiff's furniture without paying for it. For this reason, the plaintiff obtained a TRO against further sales.

The plaintiff also sought damages based on an alleged breach of contract and, as previously indicated, demanded a jury trial. The defendant counterclaimed for damages arising from the restraining order as well as from breach of contract. In essence, this litigation required multiple determinations: whether various unsold pieces of furniture belonged to the plaintiff or to the defendant; whether the plaintiff had been overpaid or, conversely, was due additional sums for furniture sold; the proper amount of commissions due the plaintiff; whether expenses of the sale had been properly accounted for and paid; and whether the defendant was damaged, and, if so, to what extent, as a result of the plaintiff improperly obtaining the TRO.

## II. *Standard of Review*

In this non-jury case, our review is *de novo* upon the record of the proceedings below. Rule 13(d), T.R.A.P. Since the sole issue before us -- whether, on the undisputed facts, the plaintiff is entitled to a jury trial -- is one of law, there is no presumption of correctness as to the trial court's judgment on this issue. *Campbell V. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

III.  *Substantive Law*


"Article 1, Section 6, of the Tennessee Constitution preserves the right to a jury trial 'as it existed at common law.'" **Smith County Education Association v. Anderson**, 676 S.W.2d 328, 336 (Tenn. 1984)(quoting from **Marler v. Wear**, 96 S.W. 447, 448 (Tenn. 1906)).  Since common law did not countenance a jury trial for inherently equitable matters, the above-referenced constitutional provision includes no such right, *see* **Moore v. Mitchell**, 329 S.W.2d 821, 823 (Tenn. 1959); however, a statutory right to trial by jury does exist in Tennessee.  The applicable provision is found at T.C.A. § 21-1-103.[6]  By this provision, the legislature intended to create a "broad statutory right to a jury trial in equity cases..." **Sasser v. Averitt Express, Inc**., 839 S.W.2d 422, 434 (Tenn.App. 1992).  However, the legislature specifically exempted "cases involving complicated accounting, as to such accounting." *See* T.C.A. § 21-1-103.  *See also* **Smith County Education Association**, 676 S.W.2d at 336; **Moore**, 329 S.W.2d at 823; **Greene County Union Bank v. Miller**, 75 S.W.2d 49, 52 (Tenn.App. 1934).


IV.  *Analysis*


It is now clear beyond any doubt that there is a right to trial by jury for matters inherently equitable.  *See* **Smith County Education Association**, 676 S.W.2d at 336; **Moore**, 329 S.W.2d at 823.  However, it is likewise clear that this statutory

---

[6]For the text of this provision, see footnote 3 to this opinion.

right does not extend to matters involving complicated accountings. *See* **Sasser**, 839 S.W.2d at 434. In an early case, this court addressed matters exempted from the purview of the statute:

> If it is a case for complicated accounting, such party has no right to demand or have a trial by jury. The foundation of jurisdiction in equity in a case of complicated accounts is based upon the inadequacy of the legal remedy, as where there is an embarrassment in making proof, the necessity for a discovery, or the production of books and papers, *or where it would be difficult, if not impossible, for a jury to unravel the numerous transactions involved, and justice could not be done except by employing the methods of investigation peculiar to courts of equity.* It is well settled that where the accounts are complicated this constitutes of itself sufficient ground for the assumption of jurisdiction by a court of equity, and where the account is made up of items for and against each party, or the items are numerous and extend over a long period of time.

**Greene County Union Bank**, 75 S.W.2d at 52 (emphasis added) (quoting 1 C.J. 618, 619). *See also* **Taylor v. Tompkins**, 49 Tenn. (2 Heisk.) 88, 89 (1870).

In the instant case, it is clear that the issues before the trial court involved an inherently complicated accounting. The accounting for damages arising from the competing claims for breach of contract required analysis of many records, including canceled checks, vendor invoices, inventory control logs, and other documents. Apparently, neither party had a formal accounting system. The record shows that the transactions between the parties covered a four-month period, involved sales

7

of over $300,000 *in toto*, and pertained to invoices from several different vendors.  There are numerous invoices and checks for purchases of furniture.  Handwritten sheets appear to be the basis for inventory control.  A number of checks are included in the record, but do not have corresponding documentation attached. Returns to vendors, as well as overpayments to both vendors and the plaintiff, are at issue.  All data had to be analyzed extensively to determine the proper amount of damages.  In addition, the accounting for damages arising from the issuance of the restraining order involved many factors.  Lost profits were calculated based on sales volume and gross profit percentages, less expenses.  The determination of these factors involved a working knowledge of the retail industry as well as a working knowledge of basic accounting principles.

The defendant hired an expert -- a certified public accountant -- to sift through and unravel the many transactions between the parties.  The expert produced an accounting of the damages under the contract and under the restraining order, which study analyzed in detail all of the various data.  Several calculations were necessary, as well as extensive compilation of supporting schedules for those calculations.

We find and hold that the issues made by the pleadings involved a complicated accounting, thus placing this case outside the broad statutory right to a jury trial set forth in T.C.A. § 21-1-103.

V. *Conclusion*

It therefore results that the judgment of the trial court is affirmed. Costs of the appeal are taxed to the appellant. This case is remanded to the trial court for enforcement of the judgment and collection of costs assessed there, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
William H. Inman, Sr.J.

9