Doris M. JOHNSON, Plaintiff-Appellant,

v.

MIDLAND BANK AND TRUST COMPANY and Volunteer Title Company, Inc., Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 7, 1986.

Application for Permission to Appeal Denied by Supreme Court July 22, 1986.

a quorum is required in order to make a decision or to deliberate toward a decision on any matter." T.C.A., § 8-44-102(c).

T.D. Forrester, Gordon, Forrester & Whitaker, Covington, for plaintiff-appellant.

Gary L. Jewel, Senior Counsel, Midland Bank and Trust Co., Memphis, Robert I. Thomason, Jr., Waverly, for defendants-appellees.

## OPINION

LEWIS, Judge.

Plaintiff Doris M. Johnson filed her complaint in which she sought a declaratory judgment to determine the extent to which two deeds of trust signed by plaintiff and her former husband, Reese Johnson, collateralized certain promissory notes she had executed in favor of defendant, Midland Bank and Trust Company (Bank),[1] whether there had been a tender of payment of the notes to the Bank, and for an injunction to enjoin foreclosure under one of the deeds of trust.

The Bank answered and filed a counterclaim in which it sought a judgment on the outstanding notes. The Bank, pursuant to Tennessee Rule of Civil Procedure 56, then moved for summary judgment which was sustained by the trial court on September 26, 1984.

The pertinent facts are as follows:

Shortly after the plaintiff and Reese Johnson were married in 1955 they began doing business with the Citizens Bank of Waverly, predecessor of defendant Bank.

In 1970, plaintiff and her sister, Louise Baker, became co-operators of a restaurant in Waverly, Tennessee, known as "The Log Cabin." In 1979, plaintiff, Reese Johnson, plaintiff's sister, and plaintiff's sister's husband executed a note in favor of the Bank in the sum of $39,000. This $39,000 note was to cover overdrafts of the Log Cabin restaurant. This note was past due in March, 1984, from November 2, 1983.

In June, 1980, the owner of the Log Cabin restaurant refused to renew the lease for plaintiff and her sister.

Reese Johnson then negotiated the purchase of an adjacent business known as "The Country Kitchen." He also negotiated a loan with the Bank to purchase The Country Kitchen. Plaintiff and Reese Johnson executed a note in the amount of $170,000 on June 19, 1980 and also executed a deed of trust on the restaurant property and plaintiff's and Reese Johnson's 678 acre farm to secure the payment of the $170,000 note. They also executed a Loan and Security Agreement pledging all of the equipment of The Country Kitchen to the Bank.

On December 17, 1980, plaintiff and Reese Johnson executed a note in the amount of $13,000 for operating capital for The Country Kitchen.

In January, 1981, plaintiff and Reese Johnson executed a note to the Bank for $12,000 for business use of The Country Kitchen.

---

1. These notes were made to the Citizens Bank of Waverly. The Citizens Bank later changed its name to United Southern Bank of Humphreys County and, on June 30, 1983, United Southern was merged into the defendant Midland Bank and Trust Company.

On February 1, 1982, plaintiff and Reese Johnson executed a note to the Bank for $50,000. This note was secured by a deed of trust on other land owned by plaintiff and Reese Johnson.

On April 1, 1982, plaintiff filed a complaint for divorce against Reese Johnson and a final decree of divorce was entered on July 2, 1982. The divorce decree contained a property settlement.

In December of 1982, Cindy Cary, a vice-president of the Bank, met with plaintiff and Reese Johnson concerning their past-due loans. As a result of this meeting, Ms. Cary sent plaintiff and Reese Johnson a letter informing them of the unpaid balance of their loans.

Thereafter, the Bank learned that plaintiff was attempting to obtain a loan to pay off a portion of the promissory notes that were secured by the deeds of trust.

On December 15, 1982, the Bank filed a complaint against plaintiff and Reese Johnson in which it sought a judgment against Reese Johnson and prayed that the conveyances made by him to plaintiff in the divorce proceeding be set aside as fraudulent.

Subsequently, Reese filed a bankruptcy petition in the United States Bankruptcy Court at Nashville. It was thereafter determined that the bankruptcy proceeding of Reese Johnson had stayed the December 15, 1982 lawsuit.

In May, 1983, the trustee in Reese Johnson's bankruptcy filed suit in the Bankruptcy Court and sought to set aside as fraudulent the conveyance of property transferred to the plaintiff as a result of the divorce decree between plaintiff and Reese Johnson.

On November 2, 1983, the Bankruptcy Court entered an order lifting the automatic stay and allowed the Bank to foreclose on the property covered by the deeds of trust.

On November 16, 1983, the trustee in Reese Johnson's bankruptcy filed a "Notice of Compromise and Settlement" of the lawsuit filed by him to set aside the conveyance made by Reese Johnson to plaintiff. The trustee determined there was no equity in the farm land for the unsecured creditors. The settlement did require plaintiff to turn over to the trustee all of the farm equipment conveyed to her in the divorce settlement.

Thereafter, the Bank instituted foreclosure proceedings against the real and personal property under the deeds of trust. However, the plaintiff on December 10, 1983, filed this suit which sought an injunction staying the foreclosure and also that the court declare the amount of indebtedness owed by plaintiff and the extent the deeds of trust served as collateral for those debts.

Pursuant to the hearing on the motion for summary judgment on September 26, 1984, an order was entered October 16, 1984, sustaining the motion for summary judgment. The court found from the record that plaintiff had admitted that she owed the Bank the principal sum of $264,496.70. The court further found that there was not a "constructive tender" and that the plaintiff owed the Bank interest to date. The Bank was awarded a judgment for $386,802.69 with interest at seventeen percent from September 26, 1984, until paid.

Plaintiff, on appeal, presents two issues. The first issue is whether the trial court erred "in granting the motion for summary judgment and in holding that the deed of trust secured all of [plaintiff's] notes."

There are five notes involved here, all of which were executed by plaintiff. They are:

| DATE | AMOUNT | PURPOSE | SECURITY |
|------|--------|---------|----------|
| 2–7–79 | $ 39,000 | Overdraft of the Log Cabin Restaurant | None |
| 6–19–80 | 170,000 | Purchase Country Kitchen Restaurant | Deed of Trust Security Agreement |
| 12–17–80 | 13,000 | Operating capital Country Kitchen Restaurant | None |
| 1–17–81 | 12,000 | Operations— Country Kitchen Restaurant | None |
| 2–1–82 | 50,000 | Unknown | Deed of Trust on Real Estate |

The deeds of trust securing the June 19, 1980, and February 1, 1982, notes contain the following:

This conveyance is made in trust to further secure payment of all other amounts with interest thereon becoming due and payable to the Note Holder under the terms of the Note or this Deed of Trust, including, but not limited to, any extensions, renewal, reamortization or refunding of said debt, any increase or addition thereto, and any present or future debt owing by Grantors to the Note Holder, or any other obligations of Grantors to the Note Holder, however evidenced, the payment of all of which being specifically secured or intended to be secured hereby; and to further secure performance and discharge of each and every promise, obligation, covenant and agreement of Grantors contained in the Note, this Deed of Trust or any other instrument executed by Grantors, pertaining to said debt for the security therefor. The debts set forth in Item 1 and Item 2 being collectively called herein the "Debt".

Plaintiff contends that the present or future debt clause does not apply to the notes dated February 2, 1979, December 17, 1980, or January 17, 1981, since each transaction was an independent contract and each note specifies on its face that it was "unsecured." She also insists that because the notes were executed "on different dates, in different amounts, and for different purposes," there is nothing to "indicate that they are part of an earlier transaction."

Tennessee has long recognized present or future debt clauses. *McGavock v. Deery*, 41 Tenn. (1 Cold.) 265 (1860).

This Court, in *Murdock Acceptance Corporation v. Jones*, 50 Tenn.App. 431, 362 S.W.2d 266 (1961), again held that present and future debt clauses were valid. In *Murdock*, the defendant and his wife executed a trust deed on a house and lot in favor of Kensinger Acceptance Corporation to secure a note in the amount of $5,000. The $5,000 was to be used in financing defendant's automobile business. The deed of trust contained a provision which stated that the deed of trust was "FOR THE PURPOSE OF SECURING the payment of the following indebtedness to Kensinger Acceptance Corporation or the owner thereof, viz: $5,000.00 together with any and all other indebtedness now or at any time due by the undersigned to the said Kensinger Acceptance Corporation." *Id.* at 433, 362 S.W.2d at 267. Kensinger from time to time would lend defendant money to purchase second-hand automobiles. When the defendant sold an automobile on credit, he would assign the conditional sales contract to Kensinger with the understanding that defendant would buy back the contract in

the event of default by the purchaser. As time passed, defendant had to buy back several contracts which caused him to sink further into debt with Kensinger.

As a result the defendant owed Kensinger a large sum because of the repossessions and a small sum as a result of loans to purchase the automobiles. Subsequently, Kensinger assigned his contract to Murdock Acceptance Corporation, and Murdock sued to foreclose on the house and lot. The defendant and his wife defended on the ground that the house and lot secured only the direct loans to purchase automobiles. The trial court upheld the defendants' contention, and Murdock appealed.

This Court reversed, holding that the language of the deed of trust was plain and unambiguous and was therefore to be enforced as written. The Court stated, in part, as follows:

> In the case at bar there was no contention that the language used in the deed of trust was a result of fraud or mistake. The language seems plain and unambiguous. We think the average layman would understand it to mean that all indebtedness owed to Kensinger by either or both of the signers of the deed of trust would be secured by the deed of trust. . . .

> To limit the security under the trust to indebtedness of Mr. Jones arising only from the wholesale financing and to joint debts of Mr. and Mrs. Jones, they should have had the deed of trust so provide in plain language. To permit these defendants to prove that "any and all other indebtednesses now or at any time due by the undersigned" actually meant only two special types of indebtednesses would jeopardize other so-called open-end deeds of trust and would not be in the public interest.

*Id.* at 439–440, 362 S.W.2d at 270.

In *Wright v. Lincoln County Bank,* 62 Tenn.App. 560, 465 S.W.2d 877 (1970), three brothers executed a deed of trust to secure a loan of $8,000 on their home place. The deed of trust provided in part that it was "to secure the full, prompt and final payment of any and all indebtedness, principal, interest, attorney's fee and costs, as may be provided in instruments evidencing such indebtedness, now or hereafter owing, directly or indirectly, or, as indorser or security for others, to Lincoln County Bank, Fayetteville, Tennessee." *Id.* at 563, 465 S.W.2d at 878.

Following the execution of the deed of trust, one of the brothers secured an additional loan of $8,000. The loan became delinquent and the bank foreclosed on the property covered by the deed of trust. One of the brothers filed suit to enjoin the foreclosure, alleging that the second advance was completed without his knowledge and consent. The trial court found in favor of the bank, and this Court, on appeal, affirmed, stating in part as follows:

> It appears that the complainant entered into a harsh contract and therefore, our sympathies are with him, but we are not at liberty to set aside such contract or hold that it is void, since there is no evidence of fraud or undue influence.

> From the evidence in the case we cannot possibly reach the conclusion that complainant did not intend for his interest in the property to be subjected to payment of an indebtedness which was created by either of his brothers without his consent or knowledge.

> To thus hold would be to disregard the plain and unambiguous language of the deed of trust that the entire property was pledged to secure future debts to the bank contracted by "* * * *the undersigned or either of them.* * * *"

> We must consider the intention of the parties to the deed of trust to be what the plain language therein declared it to be. It has been held in many of our cases, including *Guardian Life Ins. Co. v. Richardson* (1939), 23 Tenn.App. 194, 129 S.W.2d 1107, that contracts must be construed according to sense and meaning of terms used by the parties, and if such terms are clear and unambiguous, they must be taken and understood in their plain, ordinary and popular sense.

In *Petty v. Sloan* (1955), 197 Tenn. 630, 277 S.W.2d 355, the Supreme Court said it is the function of a Court to interpret and enforce contracts as they are written, notwithstanding they may contain terms which may be thought to be harsh and unjust.

*Id.* at 568–569, 465 S.W.2d at 880–881.

 The plain language contained in each of the deeds of trust signed by plaintiff and her former husband, Reese Johnson, is that the deed of trust secures the payment of "any present or future debt owed by" plaintiff and Reese Johnson to the Bank. If plaintiff had wished to exclude unsecured loans, then plaintiff should have had the deed of trust so provide. The language of the present and future debt clause is plain and unambiguous. It secures "any" present or future debt owed by the plaintiff and her then husband, Reese Johnson.

This issue is without merit.

Plaintiff, by her second issue, questions whether the trial court erred "in granting the motion for summary judgment and holding that the [plaintiff] had not tendered payment when the Bank had prevented her from doing so and had repudiated her right to have the deeds of trust released."

The trial court found, and the plaintiff admits, that at all times pertinent to our inquiry she was indebted to the Bank upon the following five promissory notes:

1. A note dated February 2, 1979, in the original principal amount of $39,000 having a principal balance of $27,496.70 at the time of the hearing on the motion for summary judgment, and bearing interest at the rate of seventeen per cent per annum with accrued interest thereon from November 2, 1982.

2. A note dated June 19, 1980, in the original principal amount of $170,000 bearing interest at the rate of seventeen percent per annum with accrued interest due thereon from July 14, 1982.

3. A note dated December 17, 1980, in the original principal amount of $13,000 and having a principal balance at the time of the hearing of $5,000 bearing interest at the rate of seventeen per cent per annum with accrued interest thereon from July 14, 1982.

4. A note dated January 17, 1981, in the original principal amount of $12,000 bearing interest at the rate of seventeen percent per annum with accrued interest from July 15, 1982.

5. A note dated February 1, 1982, in the original principal amount of $50,000 bearing interest at the rate of seventeen percent per annum with accrued interest thereon from August 2, 1982.

After a meeting with Cindy Cary, an Assistant Vice-President of the Bank, plaintiff received a letter on December 3, 1982, informing her that the "full balance of $201,713.52 will be due and payable on 12/30/82." The $201,713.52 included the $170,000 note dated June 19, 1980, secured by the deed of trust, the note of December 17, 1980, with a principal balance of $5,000 which was unsecured, and the note dated January 17, 1981, in the principal amount of $12,000 which was also unsecured.

Following the receipt of this letter, plaintiff contacted the First State Bank in Linden, Tennessee, for the purpose of borrowing $200,000 to pay the indebtedness.

The affidavit of plaintiff and Holly Goodwin, President of First State Bank, show that the plaintiff's loan request in the amount of $200,000 had been approved. First State Bank's loan was to be secured by the 678 acre tract of land and the restaurant property, both of which secured the June 19, 1980 promissory note. First State Bank's loan was also to be secured by a 181 acre tract of land which was unencumbered.

For plaintiff to have used the 678 acre tract to borrow money from the First State Bank, it would have been necessary for the defendant Bank to have released its deed of trust.

As we have stated, on December 15, 1982, the Bank filed suit against plaintiff and Reese Johnson alleging that the divorce between plaintiff and Reese Johnson was entered into for the purpose of fraudulently transferring assets between plaintiff and Reese Johnson. The Bank prayed for and was granted an order restraining plaintiff from "selling, encumbering, or otherwise disposing of the real property or any portion thereof, described in exhibit A attached hereto...." Exhibit A contained a description of the 678 acre tract which secured the $170,000 note.

Plaintiff argues that because of this lawsuit she was prevented from going forward with the loan from First State Bank and thereby prevented from making the "tender" to the defendant Bank.

Plaintiff insists that because she had made arrangements with First State Bank to have the funds with which to pay the $201,713.52 demanded by the Bank in its letter of December 3rd, she had the "willingness and ability to pay all sums she owed the Bank." She further contends that, as a result of her attempted tender and the Bank's repudiation of her rights to have the deed of trust released upon payment of the specific notes contained therein, pursuant to Tenn.Code Ann. § 47-3-604(1), she was discharged to the extent of all interest, costs and attorneys fees after the bank filed its lawsuit on December 15, 1982, and further "that she was entitled to a release of the deed of trust upon payment of the secured indebtedness."

Tennessee Code Annotated § 47-3-604(1) provides:

> *Tender of payment.*—(1) Any party making tender of full payment to a holder when or after it is due is discharged to the extent of all subsequent liability for interest, costs and attorney's fees.

Plaintiff's contention that she is discharged to the extent of all interest, costs and attorneys fees because of the Bank's lawsuit is without foundation.

The deed of trust signed by the plaintiff securing the $170,000 note provided that it was made to secure payment of the $170,-000 "and any present or future debt owing by [plaintiff]" to the Bank. This deed of trust secured not only the $170,000 note dated June 19, 1980, the $13,000 note dated December 17, 1980 with a principal balance of $5,000, and the $12,000 note dated January 17, 1981, it also secured the $39,000 note dated February 2, 1979, and the $50,-000 note dated February 1, 1982, which was also secured by a separate deed of trust on real estate. Plaintiff's alleged tender did not include the February 2, 1979, or the February 1, 1982 notes.

*Black's Law Dictionary*, 1315 (5th ed. 1979), defines "tender" as "[a]n offer of money; [t]he act by which one produces and offers to a person holding a claim or demand against him the amount of money which he considers and admits to be due, in satisfaction of such claim or demand, without any stipulation or condition."

■ Even if we should consider, which we do not, that plaintiff's attempt to borrow $200,000 from First State Bank of Linden was a constructive tender, it was not a tender of the amount due. Plaintiff admits that she owes all five of the notes.

As is argued by the Bank, plaintiff has confused the issues of tender and mortgage. Plaintiff argues that she was prohibited from obtaining a mortgage on the property that would have produced money for a tender. Even if plaintiff had obtained the loan, the offer of money would not rise to the status of a "tender" because plaintiff conditioned her offer upon obtaining a release of the Bank's lien on the 678 acres and the restaurant property. The President of the First State Bank of Linden, by affidavit, stated that the First State Bank was ready to make plaintiff a loan of $200,-000 secured by 678 acres, certain restaurant property, and a separate 181 acres. The purpose of the loan was to "discharge the debt owing to the U.S. Bank of Humphreys County, Tennessee, on said property."

Tender must be unequivocal.

Generally speaking, a tender, in order to be effective, must be absolute and unconditional.

In *Ingold v. Phoenix Assur. Co.*, 230 N.C. 142, 52 S.E.2d 366, 8 A.L.R.2d 1439 (1949), the Supreme Court of North Carolina said:

> "It is the universal rule that in order to constitute a valid and effectual tender of money admitted to be due, the party who makes it must allege and show that since the refusal to accept the money he has always been ready to pay the same, and must bring the amount of the tender into court."
>
> . . . .

The $51,250.00 was due immediately after Haun paid the judgment and during all of this period of time from April 20, 1962, until the present date, the defendant has retained the use of said sum of money, whereas, if it had been paid into Court within a reasonable time after suit was instituted, such sum would have been earning interest, which interest would have been awarded to complainant upon final termination of the litigation.

It is indeed surprising, in these days of high interest rates, that the defendant would complain about paying six percent interest on this sum of money which it has been permitted to retain all of this time.

*Haun v. Guaranty Security Insurance Co.*, 61 Tenn.App. 137, 168–171, 453 S.W.2d 84, 99–100 (1969) (citations omitted).

Further, "[w]hen a tender is refused, the debtor must keep the tender open, as by paying the money into court, and if this is not done, the debtor cannot claim the benefit of [Tenn.Code Ann. § 47–3–604]." 6 Anderson, *Uniform Commercial Code* § 3–604:5 (3d ed. 1984).

In *Greene County Union Bank v. Miller*, 18 Tenn.App. 239, 75 S.W.2d 49 (1934), this Court stated that any tender "must be actual, absolute and unconditional." The Court went on to state:

> The claim of conversion is based upon the fact that a short time after the original bill was filed, Mrs. Miller, with her counsel, came to the complainant bank and had a conversation with P.C. Wakefield, its president, without giving any notice to counsel for the bank, in whose hands the notes had been placed for collection and who had filed the original bill, and who had no knowledge of the visit of Mrs. Miller and her counsel. Her counsel testified that in the conversation with Mr. Wakefield he offered to pay all that was due on that note if it would be surrendered to Mrs. Miller. There is no evidence that any money was actually tendered. He says that Mr. Wakefield declined to accept payment of the note on the ground that the Greene County Bank could hold the shares of stock for other indebtedness against her held by the bank. Mr. Wakefield testified that he declined on the ground that the note was in the hands of the attorney for the bank and had been sued upon and she would have to settle with the attorneys. There is no evidence that Mrs. Miller or her counsel offered to pay any part of the court costs which had accrued. She and her counsel knew that the bill had been filed. This evidence does not show that there was a conversion of the bank stock. Before there can be a conversion, there must be a proper tender of the amount actually due. The rule is that where a creditor holds securities as collateral for several items of indebtedness (which this note included), a tender by the debtor which does not include all such items does not operate to release the securities. In order to support the averment of a tender of money, it is necessary for a party to show that the precise sum or sums was actually produced and offered to him to whom it is to be paid.

*Id.* at 246–247, 75 S.W.2d at 53 (citations omitted).

The facts in *Greene County* are almost identical to the facts here. In *Greene County* the shares of stock held by the bank covered other indebtedness. The alleged tender in *Greene County* covered only one note. Here, the deed of trust covered other indebtedness. The alleged tender did not cover all of the indebtedness.

In *Greene County* the alleged tender was conditional. Mrs. Miller's counsel offered to pay what was due on one note if the stock was surrendered. Here, the plaintiff's alleged tender was conditioned upon the Bank's releasing the deed of trust upon the payment of three of the five notes.

In *Greene County* there was no evidence that any money was actually tendered, and here, there is no evidence that the plaintiff tendered any money.

Even if there had been a tender by the plaintiff of $201,713.52, it would not have included all of the notes secured by the deed of trust and would not have operated to release the deed of trust. Plaintiff attempted to gain a release of the deed of trust by paying only a portion of what the plaintiff owed the Bank.

There was no tender, constructive or otherwise.

It therefore results that the judgment of the trial court is affirmed with costs assessed against the plaintiff and the cause remanded to the trial court for the collection of costs, the enforcement of its judgment, and any further necessary proceedings.

TODD, P.J., and KOCH, J., concur.