**FIRST PEOPLES BANK OF JEFFERSON COUNTY, TENNESSEE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV–3–91–0693.**

United States District Court, E.D. Tennessee, at Knoxville.

Aug. 14, 1992.

Dale C. Allen, Baker, Worthington, Crossley, Stansberry, & Woolf, Knoxville, Tenn., for plaintiff.

William K. Rounsborg, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JORDAN, District Judge.

This is a civil action under 26 U.S.C. § 7426 in which the plaintiff bank contends that the defendant United States, acting through the Internal Revenue Service, wrongfully levied on property against which the bank had at the time of the levy a prior lien. The action is before the court for consideration of the United States' motion to dismiss [doc. 7], in support of which the United States argues that the claimed lien was inchoate, and therefore inferior to the tax lien for the enforcement of which levy was had.

The court heard oral argument on this motion on Friday, August 11, 1992. On the basis of the record before it, the court finds as follows.

In the pretrial order filed in this civil action on May 13, 1992 [doc. 15], the parties agreed to the pertinent facts alleged by the plaintiff bank, and stipulated to the completeness and accuracy of the copies of documents attached to the bank's com-

plaint. On June 3, 1988, the bank became by way of assignment the holder of a perfected, purchase money security interest in a 1987 Dodge van owned by Taft & Associates, the taxpayer in question, and the bank's borrower. Later, on August 15, 1988, the bank financed Taft & Associates' purchase of a second vehicle, a 1988 Ford pickup truck, in which the bank perfected a security interest on or about the same day. The security agreement in this second transaction contained a "dragnet" clause, in which the Ford pickup truck was stated to be collateral security for "each and every debt, liability, and obligation of every type and description which debtor may now or at any time hereafter owe to secured party."

Notice of the tax lien in question was properly filed on July 10, 1991[1], Taft & Associates having become liable for employment taxes for its tax year ending in 1990. Taft & Associates also defaulted on its installment sale contract which had been assigned to the plaintiff bank, and accordingly surrendered the Dodge van. The bank sold this van on August 23, 1991, for a price which left a deficiency balance of $5,909.32, together with interest at the rate of $1.40 *per diem*, and an attorney's fee.

In July and August, 1991, Taft & Associates made payments to the plaintiff bank which satisfied in full its note, the one made in the August 15, 1988 transaction. The bank marked both this note and the security agreement in which its borrower granted a security interest in the Ford pickup truck "paid" on August 5, 1991.

Later, the Internal Revenue Service seized Taft & Associates' Ford pickup truck, and gave notice of a public auction of it scheduled on October 30, 1991. The plaintiff bank gave informal and formal notices of its claim of a prior lien against this vehicle, and applied for a taxpayer assistance order. The Internal Revenue

Service did not respond to these notices and did not grant the requested taxpayer assistance, but instead postponed the auction, and, at the rescheduled auction, sold the pickup truck for $7,600.00.

As is stated in the pretrial order,

[t]he parties' dispute in this civil action is limited to whether the plaintiff First Peoples Bank released or otherwise caused to become extinguished its security interest in Taft & Associates' 1988 Ford pickup truck, so as to allow the defendant United States' federal tax lien against this motor vehicle to become superior to any interest claimed by First Peoples Bank in the motor vehicle.

However, the preliminary issue raised by the defendant's motion is the choateness or inchoateness of the bank's claimed lien against the Ford pickup truck on the date of the filing of the tax lien.[2]

It can be seen from the undisputed facts stated above that when the notice of tax lien was filed in July, 1991, the plaintiff bank had not yet sold the Dodge van, and therefore had not yet established the amount, if any, of the collateral deficiency on Taft & Associates' installment sale contract assigned to it. Therefore, the United States argues, any lien which the bank had against the Ford pickup to secure the deficiency on the installment sale contract was inchoate at the time the tax lien attached, and so inferior to the tax lien.

Section 6323 of the Internal Revenue Code as presently codified (*see* 26 U.S.C.A. § 6323 (West 1992 supp.)) provides in its subsection (a) that a federal tax lien of the kind in issue here "shall not be valid as against any ... holder of a security interest" until notice of the lien has been given. "Security interest" is defined in § 6323(h)(1):

The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or

---

1. The plaintiff has filed an exception [doc. 21] to the pretrial order to show that the notice of tax lien was filed in the appropriate register's office on July 22, 1991. This does not affect the outcome in this case.

2. Neither party has submitted any authority on the issue of the effect, if any, on the bank's cause of action of the fact that the bank stamped the August 15, 1988 security agreement "paid" on August 5, 1991. The court therefore assumes that this issue is reserved for trial, presently scheduled on September 25, 1992.

performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

These provisions come from the Federal Tax Lien Act of 1966, Pub.L. 89–719, 80 Stat. 1125 (1966). Prior to the 1966 amendment, the pertinent portions of § 6323 of the Internal Revenue Code of 1954 read,

> (a) ... the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been given [in accordance with the statute].

> (c)(1) **Exception.**—Even though notice of a lien provided in section 6321 has been filed in the manner prescribed in subsection (a) of this section, the lien shall not be valid ... as against any mortgagee, pledgee, or purchaser of [a] security, for an adequate and full consideration in money or money's worth, if at the time of such mortgage, pledge, or purchase such mortgagee, pledgee, or purchaser is without notice or knowledge of the existence of such lien.

The legislative history of the 1966 act, S.Rep. No. 1708, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.Code Cong. & Admin. News 3722, suggests, as the plaintiff bank urges, that the act was intended to soften to some degree the choateness doctrine. In its general statement, the Senate report states,

> This bill substantially improves the status of private secured lenders.... [V]arious types of secured creditor interests already having, or given, priority status over tax liens are specifically defined, and it is provided that where those interests qualify under the definitions they are to be accorded this priority status whether or not they are in all other respects definite and complete at the time notice of the tax lien is filed.

*Id.* at ——, 1966 U.S.Code Cong. & Admin. News at 3723. This language is repeated in the report's explanation of § 6323(a). *Id.* at ——, 1966 U.S. Code Cong. & Admin. News at 3724–25.

In the report's discussion of § 6323(h), *id.* at ——, 1966 U.S.Code Cong. & Admin. News at 3734, it is stated that a security interest arises for the purposes of the tax lien act when the property is in existence, the security interest is protected under local law against a subsequent judgment lien, and "to the extent the holder has parted with money or money's worth." In a footnote to the quoted text, *id.* n. 4, 1966 U.S.Code Cong. & Admin.News at 3734 n. 4, the report states, "This is intended to include money previously parted with if, under local law, past consideration is sufficient to support an agreement giving rise to a security interest." This language is substantially the same as that of Treas. Reg. § 301.6323(h)–1(a)(3), 26 C.F.R. § 301.-6323(h)–1(a)(3) (1991), quoted in the plaintiff bank's rebuttal brief [doc. 14].

In its brief in support of its motion to dismiss [doc. 7A], the United States conceded for the purposes of its motion "that, under Tennessee law, such 'dragnet' clauses [as the one in issue in this case] are enforceable against creditors, other than the United States, which might acquire interests in property subsequent to the creation of the security interest through the use of such a clause."

The court is aware of the Supreme Court's formulation and application of the choateness doctrine before the enactment of the Federal Tax Lien Act of 1966. For example, in *United States v. Pioneer American Insurance Company*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963), even though the mortgage, which was conceded to be superior to the federal tax lien, contained a provision for an attorney's fee in the event of default and foreclosure, and even though default under the mortgage, the mortgagee's engagement of an attorney, and commencement of a suit for foreclosure all occurred before the filing of the notice of the tax lien, the mortgagee was held not to have priority over the tax lien

with respect to the attorney's fee awarded to it, because the amount of the fee was not fixed by the court in which foreclosure was decreed until after the filing of the tax lien. The Supreme Court relied on the traditional, federal rule that a lien is not perfected to the extent necessary to give it priority over a federal tax lien until there is nothing more to be done to render the lien choate—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established. *Id.* at 89, 83 S.Ct. at 1655 (citation omitted).

However, the Supreme Court decisions cited by the United States and rendered after the enactment of the Federal Tax Lien Act of 1966 are inapposite. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), was not a tax lien case, but was instead concerned with the priorities of liens to secure Small Business Administration and Farmers Home Administration loans in the absence of explicit guidance from Congress. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), states the limitations imposed by the Fourth Amendment upon the Internal Revenue Service in searching and seizing in the course of a levy. The issue in *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985), was whether the United States, in levying for the collection of unpaid taxes, could, like the taxpayer, reach all of the funds in a joint bank account.

The Supreme Court's discussion of the choateness doctrine and the Federal Tax Lien Act of 1966 in *Kimbell Foods, supra,* even though *obiter dicta,* suggests that the plaintiff bank's arguments in the case at bar have merit. The Supreme Court discussed this issue in *Kimbell Foods* because it was necessary to address the contention that the lien priority issues in that case should be governed by a body of federal common law patterned on that developed concerning federal tax liens. The court noted that the 1966 enactment itself provided evidence that treating the United States like any other secured creditor would not run afoul of a strong federal policy in favor of the priority of liens for the benefit of the United States:

The Federal Tax Lien Act of 1966 ... provides further evidence that treating the United States like any other lender would not undermine federal interests. These amendments modified the Federal Government's preferred position under the choateness and first-in-time doctrines, and recognized the priority of many state claims over federal tax liens. In enacting this legislation, Congress sought to "improv[e] the status of private secured creditors" and prevent impairment of commercial financing transactions by "moderniz[ing] ... the relationship of Federal tax liens to the interests of other creditors."

440 U.S. at 738, 99 S.Ct. at 1463–64 (citations omitted) (footnote omitted). Elsewhere in its opinion, the court noted that before the Federal Tax Lien Act of 1966, there was no statutory guidance concerning priorities in cases involving federal tax liens, and that the act "set specific priorities to displace the doctrines that this Court had created." *Id.* at 720, n. 6, 99 S.Ct. at 1454, n. 6.

The Court of Appeals for the Fifth Circuit has adopted the view that the 1966 act displaces the earlier common law requirement that a competing lien be choate, in a case involving the priorities of a federal tax lien and other liens. In *Aetna Insurance Company v. Texas Thermal Industries, Inc.*, 591 F.2d 1035, 1038 (5th Cir.1979) (citation omitted) (footnotes omitted) (*per curiam*), that court stated,

Congress has spared us the necessity of engaging in the metaphysical analysis necessary to answer the question [of choateness].... We ... hold, that whatever role the "choateness" rule of federal common law may play in other contexts, it has been supplanted by the provisions of § 6323 with respect to tax lien priority questions as to which that statute provides an unambiguous federal law answer.

*See also Atlantic States Construction, Inc. v. Hand, Arendall, Bedsole, Greaves*

*and Johnston,* 892 F.2d 1530 (11th Cir. 1990).

The Court of Appeals for the Sixth Circuit has not addressed this precise issue. It held in *Citizens State Bank v. United States on behalf of Internal Revenue Services,* 932 F.2d 490 (6th Cir.1991), that where the mortgagee had released the mortgage in error, after the Internal Revenue Service had filed its notice of tax lien against the property of the mortgagor, the mortgagee had no security interest in property of the mortgagor which would provide it with a lien with priority over the tax lien. This is a distinct issue.

*United States v. 3809 Crain Limited Partnership,* 884 F.2d 138 (4th Cir.1989), cited by the United States, is not controlling authority. The deed of trust in that case was held not to be a security interest for the purposes of the Federal Tax Lien Act of 1966 because it granted a lien against trust property for the sole benefit of the trustees, who had incurred much debt to the lienor bank as a result of a check-kiting scheme, and who therefore gave the deed of trust in a transaction designed to keep the bank out of regulatory trouble and to keep themselves out of jail. In the case at bar, in contrast, the lien against the Ford pickup truck was granted to secure an obligation for purchase money as well as the borrower's other obligations owed or to be owed to the plaintiff bank, and the United States has conceded for the purposes of its motion that a dragnet clause, in which a security interest is granted in consideration of past and future loans, is enforceable under Tennessee law. This concession must be understood in this context to concede that the plaintiff bank has met the statutory criterion of having a lien "protected under local law against a subsequent judgment lien arising out of an unsecured obligation."

As for *Samco Mortgage Corporation v. Keehn,* 721 F.Supp. 1209 (D.Wyo.1989), upon which the United States also relies, it likewise is not controlling. The issue in that case was whether the correction of an erroneous property description in a mortgage related back to the date of recordation of the original mortgage so as to give it priority over an intervening tax lien. Furthermore, the district court in *Samco Mortgage* did not address any possible conflicts between the Federal Tax Lien Act of 1966 and the cases decided under the choateness doctrine before the act.

The issue presented by the defendant United States' motion therefore reduces itself, in the court's opinion, to whether the plaintiff bank's lien against the Ford pickup truck to secure Taft & Associates' earlier borrowing (the installment sale contract), granted by the dragnet clause used in the second financing transaction, was supported by consideration once Taft & Associates' note, the one by which it borrowed the funds with which to acquire the Ford pickup truck, was paid. The answer to this, under the language in the footnote to the Senate report which was carried over into the pertinent Treasury regulation, is that money parted with previously satisfies the statute if, under local law, past consideration is sufficient to support the security agreement.

■ Past consideration is plainly sufficient to support a security agreement under Tennessee law, which has adopted a version of the Uniform Commercial Code. A security interest attaches, in the absence of an agreement to delay attachment, as soon as there is a security agreement (or pledge), value has been given, and the debtor has rights in the collateral. Tennessee Code Annotated § 47–9–203 (1991 supp.).[3] A person gives value for rights if he or she acquires them "as security for ... a preexisting claim." T.C.A. § 47–1–201(44)(b) (1991 supp.). Tennessee has recognized the validity of "present or future debts" or cross-collateralization clauses in real estate financing transactions since before its adoption of the Uniform Commercial Code. *See Johnson v. Midland Bank and Trust*

---

**3.** There is no contest in this case concerning the plaintiff bank's perfection (assuming attachment) of its security interests in Taft & Associates' motor vehicles by compliance with the Tennessee statutes which deal specifically with the notation of liens on motor vehicle title certificates.

*Company,* 715 S.W.2d 607 (Tenn.App.), *permission to appeal denied, id.* (Tenn. 1986), and authorities cited therein.

Even if choateness remains an issue in this case, on the date of the filing of the tax lien against the property of Taft & Associates, after the payment in full of this debtor's note for the purchase money used to purchase the Ford pickup truck, the amount which was still secured by the truck was fixed: the total balance due on the earlier obligation, the assigned install-ment sale contract. The plaintiff bank had not at the time of the filing of the tax lien sold the repossessed Dodge van, and there-fore remained free to elect to proceed against the Ford pickup truck.

For the reasons stated, the court will deny the United States' motion to dismiss this civil action.