# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 18, 2000 Session

## MICHAEL A. SMITH, ET AL. v. STEVE C. FUTRIS, ET AL. v. RICHARD FELTUS

**Direct Appeal from the Chancery Court for Shelby County**
**No. 103125-2    Floyd Peete, Jr., Chancellor**

---

**No. W1998-00181-COA-R3-CV - Filed April 23, 2001**

---

This is a contract dispute. The plaintiffs entered into a contract to buy the defendants' office condominium and equipment. The contract provided that the defendants would execute a note for the balance of the purchase price, payable in monthly installments over a twenty year term. The contract had no express provision on the right of prepayment. The promissory note expressly granted the plaintiffs the right of prepayment. Five years later, the plaintiffs attempted to prepay the note. The defendants refused the plaintiffs' offer, saying that the plaintiffs had no right of prepayment. The plaintiffs then ceased making any payments on the note. The plaintiffs later filed a lawsuit seeking, *inter alia*, a declaratory judgment that they had the right of prepayment. The defendants filed a counterclaim seeking reformation of the note and the deed of trust. The defendants also filed a third party claim for damages against the plaintiffs' attorney, who had prepared the closing documents, including the note. The defendants alleged that the attorney had breached his duty of due care to them by putting a right of prepayment in the note. The trial court found that the plaintiffs had the right to prepay and that the plaintiffs had made an effective tender of payment to the defendants. The trial court dismissed the defendants' third party claim against the attorney, finding that he had not represented the defendants and owed no duty of care to them. The defendants appeal. We affirm in part and reverse in part, finding, *inter alia*, that the promissory note gave the plaintiffs the right of prepayment, and also finding that the plaintiffs have not made an effective tender of payment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the trial court is Affirmed in Part and Reversed in Part**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J. joined.

E. William James, Memphis, Tennessee, for the appellants, Steve C. Futris, Zoe Futris and Steve C. Futris D.D.S., P.A.

Harold G. Walter, Memphis, Tennessee, for the appellees, Michael A. Smith and Rene A. Smith. Tim Edwards, Memphis, Tennessee, for the appellee, Richard Feltus.

**OPINION**

Defendant/Appellant Steve C. Futris ("Dr. Futris") is a Memphis dentist who worked with his wife, Defendant/Appellant Zoe Futris ("Mrs. Futris"). The Futrises were employed by Defendant/Appellant Steve C. Futris D.D.S., P.A., ("Futris, P.A."), the professional association that owned the office condominium and dental and office equipment which Dr. Futris utilized in his dental practice. In 1988 Dr. Futris was nearing retirement age. He began negotiating for the sale of the office condominium and equipment to another Memphis dentist and his wife, Plaintiff/Appellees Michael A. Smith ("Dr. Smith") and Rene A. Smith ("Mrs. Smith"). During the contract negotiations and drafting, the Futrises were represented by their daughter, Memphis attorney Valerie Futris Fisher (" Valerie") and her employer, Memphis attorney Bill Fisher. Valerie and Bill Fisher were dating at that time, and later married. Third-Party Defendant/Appellee Richard Feltus ("Feltus") represented the Smiths in the transaction.

On January 28, 1988, the Futrises and the Smiths entered into a contract which, *inter alia*, provided for the sale of the office condominium, dental equipment and office furniture and furnishings to the Smiths for $260,000.00. The contract provided that the Smiths would pay $30,000 cash at closing, and that they would assume the $134,000 mortgage on the property. The contract stated that "the balance of the purchase price shall be evidenced by a promissory note payable to Sellers [the Futrises and Futris, P.A.]bearing interest at the rate of 12% per annum which shall be payable in equal monthly installments of principal and interest over a period of 20 years, beginning on the 1st day of the month following the month in which the sale is closed." The contract contained no provision addressing prepayment of the note.

After the contract was signed, the Smiths' attorney, Feltus, agreed to prepare the closing documents and handle the closing. Among the closing documents was a preprinted standard "Monthly Installment Amortized Note Secured by Deed of Trust." At the bottom of the front page of the note, immediately above the Smiths' signatures, was a clause which granted the Smiths the right to make prepayment on the note. The place for the Futrises' signature was on the back page of the note, immediately below a paragraph which stated that "Steve C. Futris and wife, Zoe T. Futris, owners and holders of Note acknowledge that Maker is entitled to advance credit of the last three installments as set forth in Note terms, same having been prepaid pursuant to contract terms." The Futrises testified that neither their daughter Valerie nor Bill Fisher accompanied them to Feltus's office to sign the closing documents. However, Mrs. Futris testified that she took the note and other closing documents to Valerie to have the Futrises' signatures notarized. Mr. Feltus retained the note after the closing.

On June 1, 1993, five years after the closing was completed, Dr. Smith called Mrs. Futris to tell her that he wished to prepay the balance due under the note. Dr. Smith testified that when he called the Futrises on that date, he told Mrs. Futris that he had made arrangements to prepay the note and could pay the entire indebtedness that month. He said that at the time of the call he had already obtained approval for his loan from the bank and that, at the request of the bank, he had called to

verify the total amount of the payment. Dr. and Mrs. Futris refused Dr. Smith's offer to prepay the note, telling him that he had no right of prepayment. The Smiths then ceased making monthly payments under the note.

On July 27, 1993, the Smiths filed suit against the Futrises and Futris, P.A. in the Chancery Court of Shelby County, seeking a declaratory judgment that they had the right to prepay the note in full. In the lawsuit, the Smiths asserted that the note clearly provided on its face that the Smiths reserved the right of prepayment, that the Smiths had obtained a commitment from First Tennessee Bank to lend them the funds necessary to pay off the note, that the Smiths had informed the Futrises of their desire to prepay the note, and that the Futrises had refused prepayment because they believed that the Smiths had no right to prepay under the terms of their contract. The Smiths also asked the trial court to issue a mandatory injunction, ordering the Futrises to accept the prepayment, and sought damages from the Futrises "in an amount sufficient to reimburse them for any and all extra expense and interest which they might incur as a result of Defendants' refusal to accept payment when tendered . . . ."

In response, the Futrises filed an answer and counter-claim against the Smiths, as well as a third party complaint against the Smiths' attorney, Feltus. The Futrises admitted that they had refused the Smiths' "conditional tender" of the balance due under the note. They asserted that any right to prepay the note had been excluded from the parties' contract; therefore, the Smiths had no right of prepayment. The Futrises said that they had lowered the purchase price of the property by $80,000 in exchange for the 12% interest rate on the loan, and that they structured repayment to include the above average interest rate as part of Dr. Futris's retirement planning. The Futrises asked the trial court to reform the note and deed of trust to disallow prepayment, in accordance with the terms of the contract between the parties, alleging that the note's prepayment term was the result of either fraud or mistake. The Futrises asserted that the Smiths' attorney, Feltus, breached his duty of due care by failing to prepare the note and deed of trust in accordance with the contract's provisions. They alleged that the Smiths were jointly and severally liable for Feltus's breach, under the doctrine of respondeat superior or under a conspiracy theory. The Futrises sought a judgment against both Feltus and the Smiths for all attorney's fees and costs caused by Feltus's negligence in preparing the closing documents.

Both the Smiths and the Futrises testified at the trial. Dr. Smith testified that the right to prepay had always been of paramount importance to him. He said that, at each stage of the contract negotiations, he had discussed with Feltus whether he would have the right to prepay. Smith testified that throughout the negotiations he was under the impression that he would have the right to prepay. Dr. Smith asserted that, although the executed contract did not expressly grant the right of prepayment, he was still certain that he would have the ability to prepay the note.

The Futrises testified that they never intended to grant the Smiths a right to prepay the loan. In fact, they testified that they had deliberately excluded prepayment language from the contract. The Futrises and Valerie and Bill Fisher testified that Smith's concern about his right to prepay was never communicated to them during the contract negotiations. Bill Fisher testified that the Futrises agreed

-3-

to lower the original asking price for the property by $80,000 in exchange for the 12 % interest rate over the twenty year period. Mr. Fisher also testified that he had told Feltus that prepayment was "absolutely unacceptable." On cross-examination, Mr. Fisher acknowledged that in an earlier deposition he had stated that he had no memory of any specific instance in which he and Feltus had discussed the issue of prepayment. Mr. Fisher ultimately conceded that he had no memory of any specific discussions with Feltus about prepayment, but he added that he was certain he and Feltus had discussed the issue at some point because of its importance to both the Futrises and the Smiths.

Mrs. Futris, Bill Fisher and Valerie Fisher each testified that Feltus's original draft of the contract contained a provision allowing the Smiths the right to prepay the note. They testified that this draft was given to Dr. Futris's accountant, David Jones ("Jones"), for review and comment. Jones testified that he had strongly advised the Futrises not to allow prepayment of the note, due to the adverse effect it would have on Dr. Futris's retirement and tax planning. For that reason, according to the Futrises and the Fishers, the draft language allowing for prepayment was struck out. A copy of the initial draft, showing the prepayment language marked out, was introduced into evidence. None of the subsequent drafts of the contract contained the prepayment language.

Bill Fisher testified that after the contract was signed, Feltus agreed to prepare the closing documents. Valerie and Bill Fisher were involved in a complex trial at the time which precluded them from spending time on the matter. Consequently, both Valerie and Bill Fisher said that their involvement in the matter, with the exception of one or two "ministerial acts, " ended once the contract negotiations were completed and the contract was signed. Bill Fisher testified that he had trusted Feltus to prepare the closing documents in accordance with the contract's terms. Feltus testified that he believed that the Futrises were still represented by the Fishers at the time of closing, and that, although he had agreed to prepare the closing documents, he was not the "quote, closing attorney." He testified that he had never acted as the Futrises' attorney.

The facts surrounding the closing are also in dispute. The Smiths and Feltus testified that there was a formal closing, attended by all the parties and their attorneys, on April 15, 1988. The Futrises and the Fishers denied that any formal closing ever took place. The Futrises testified that on April 14, 1988, after the closing documents were prepared, they each went to Feltus's office, at separate times, and were taken to a conference room in which a number of documents ready for their signatures were laid on a table. Neither their daughter Valerie nor Bill Fisher were with either Dr. or Mrs. Futris at the time they signed the closing documents. Both Dr. and Mrs. Futris stated that the note was face down on the table, so that all that showed was the back of the note, with the space for their signatures, immediately under a paragraph stating that the Smiths were entitled to advance credit of the last three installments of the note "that amount having been prepaid pursuant to contract terms." Both Dr. and Mrs. Futris testified that they did not read the front side of the note, containing the language granting a right of prepayment. They indicated that they were not aware that they were signing the promissory note. Bill and Valerie Fisher testified that neither one of them reviewed the closing documents before the Futrises signed them.

-4-

After taking the case under advisement, the trial court issued its Memorandum and Order on November 9, 1998. The trial court found that the plaintiffs had a right of prepayment and that an effective tender of payment had been made. The order reads in part:

> Based upon Tennessee Code Annotated § 47-14-108, <u>Davis v. Hinton</u>, 519 S.W.2d 776 (Tenn. 1975), statements of counsel for the parties and the entire record in this cause, the Court finds in favor of the Plaintiffs on their Complaint for Declaratory Judgment, Mandatory Injunction. The Court finds that the Plaintiffs are entitled to a Declaratory Judgment affirming their right to prepay the promissory note entered into on April 14, 1988 for the principal sum of Ninety Eight Thousand Nine Hundred and Twenty Six Dollars and Forty Cent ($98,926.40) with interest thereon at a rate of twelve percent (12%) per annum amortized over a period of twenty (20) years maturing on April 1, 2008.

> The Court finds that the Plaintiffs tendered payment of the promissory note to the Defendants on or about June 1, 1993 and Defendants refused said payment. Consequently, if the Plaintiffs exercise their right to prepayment within sixty (60) days upon entry of this order, the Defendants are ordered to accept payment of said note, the amount of which shall be calculated based upon the total amount of principal and any interest due on June 1, 1993 to pay the note in full minus any amount paid by the Plaintiffs since that date. If, however, the Plaintiffs exercise said right more than sixty (60) days after entry of this order, the Defendants are ordered to accept payment of said note, but the amount shall be calculated based upon the total amount of principal and any interest due as of the date of payment of the note. Upon payment of the note, the Defendants are further ordered to execute a Release of the Deed of Trust which secures the promissory note.

The trial court also found that Feltus had not been acting as the Futrises' attorney and therefore owed no duty to them. The trial court found in the alternative that, even if Feltus had owed a duty to the Futrises, their negligence claim against him was barred by the applicable one-year statute of limitations, since the Futrises could have discovered that the closing documents differed from the contract at the time that they signed them, had they been exercising due diligence. From this decision, the Futrises now appeal.

The Futrises raise a number of different issues on appeal, which may be condensed into the following: (1) whether the trial court erred in finding that the Smiths were entitled to prepayment of the note; (2) whether the trial court erred in finding that the Smiths effectively tendered payment to the Futrises on June 1, 1993; and (3) whether the trial court erred in finding that Feltus owed no duty of care to the Futrises.

Our review of these issues is governed by Tennessee Rule of Appellate Procedure 13(d), which provides that review of findings of fact by the trial court shall be *de novo* upon the record of the trial court, accompanied by a presumption of correctness in the factual findings, unless the

evidence preponderates otherwise. Tenn .R .App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Our review of the trial court's conclusions of law, including its interpretation of the contract, is *de novo* on the record, with no presumption of correctness. *Id.*

The Futrises first argue that the trial court erred in finding that the Smiths were entitled to prepay the note. The Futrises assert that the contract, by its clear, unambiguous terms, does not allow the Smiths to prepay the note and that the prepayment clause in the note had to be the result of either mistake or fraud on the part of Feltus and/or the Smiths. The Futrises note that the contract was completely integrated, and that it clearly expressed that the Smiths owed them monthly payments over twenty years at 12% interest, and contained no right of prepayment. They argue that the note cannot vary from the terms of the contract. They contend that they are entitled to specific performance because, under Tennessee law, parties are bound by the unambiguous language of their contract. In the alternative, the Futrises argue that they are entitled to reformation of the note and deed of trust to conform to the contract.

The Smiths argue that the trial court did not err by finding that they had the right to prepay the note, since the note, signed by all parties, expressly grants them the right of prepayment. They observe that the note was incorporated by reference into the contract. The Smiths assert that the note does not contradict the terms of the contract because the contract is silent on the issue of prepayment.

Tennessee Code Annotated Section 47-14-108 states that "[e]xcept as limited by statutory provisions expressly applicable thereto, the privilege of prepayment of a loan, in whole or in part, and any refunds or premiums with respect thereto, shall be governed by contract between the parties." Tenn. Code Ann. § 47-14-108 (1995). Prepayment of a loan is not permitted absent an express contractual provision allowing for prepayment. *Sound Stage Studios, Inc. v. Life Investors Ins. Co. of America*, 1988 WL 138827, at * 2 (Tenn. Ct. App. Dec. 30, 1988); *Davis v. Hinton*, 519 S.W.2d 776, 777 (Tenn. 1975). "A payor may, however, gain the right to pay the note early, and avoid part of the interest, by including that right in the note or other loan documents as part of the agreement between the parties." *Sound Stage Studios, Inc.*, 1988 WL 138827 at * 2.

In this case, the contract does not expressly grant the right of prepayment, but it also does not expressly preclude prepayment. It is simply silent on the issue of prepayment. The contract references the promissory note, stating that "the balance of the purchase price shall be evidenced by a promissory note payable to Sellers bearing interest at the rate of 12% per annum which shall be payable in equal monthly installments of principal and interest over a period of 20 years. . . ." The referenced promissory note expressly provides for prepayment. Since the contract is silent on the issue of prepayment, the promissory note does not contradict the terms of the contract, it merely contains an additional term. "'And where an executed agreement refers to other documents and makes their conditions part of the executed agreement, the documents must be interpreted together as the agreement of the parties.'" *Hardeman County Bank v. Stallings*, 917 S.W.2d 695, 698 (Tenn. Ct. App. 1995)(quoting *Engert v. Peerless Ins. Co.*, 382 S.W.2d 541, 547 (Tenn. 1964)). In this case, therefore, the note, along with its express provision allowing for prepayment, became part of the agreement between the parties.

The Futrises argue strenuously that the contract negotiations demonstrate their intent that the promissory note contain no right of prepayment. The contract, however, is silent on the issue of prepayment, while the note expressly grants the Smiths the right to prepay. When interpreting a contract, the court "does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written." *Union Planters Nat. Bank v. American Home Assur. Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993). The contract and the referenced promissory note, taken together, include the right to prepay. Consequently, the right to prepay must be deemed part of the overall agreement between the parties. We find, therefore, that the trial court did not err in finding that the Smiths had the right to prepay under the contract.

The Futrises next argue that the trial court erred in finding that the Smiths made an effective tender of payment on June 1, 1993. They contend that Dr. Smith did not offer to deliver any amount of money on that date, but only indicated that he wished to prepay the note. The Futrises further contend that tender did not occur on that date because Dr. Smith did not have the funds necessary to pay the sum due at that time. Rather, Dr. Smith's loan commitment with the bank was not effective until June 7th, six days later. The Futrises also assert that an effective tender could not have taken place because the amount due was in dispute; consequently, any amount offered by Dr. Smith would not be sufficient to cut off any future interest.

Dr. Smith argues that his call to the Futrises on June 1, 1993, was an effective tender. Therefore, any interest on the note which accumulated after that date should be discharged. He contends that the fact he had already been approved for the loan at the time he informed the Futrises of his wish to prepay evidences that he was ready and willing to pay.

Tender is " an offer of money, [t]he act by which one produces and offers to a person holding a claim or demand against him the amount of money which he considers and admits to be due, in satisfaction of such claim or demand, without any stipulation or condition." *Johnson v. Midland Bank & Trust Co.*, 715 S.W.2d 607, 613 (Tenn. Ct. App. 1986) (quoting Black's Law Dictionary, 1315 (5th ed. 1979)). Generally, a tender must be unequivocal; it must be absolute and unconditional in order to be effective. *Id.* at 613-14. In order to constitute a valid and effective tender, the party offering payment must allege and show that, since the creditor's refusal to accept the money, he has been ready and willing to pay the amount. *Johnson*, 715 S.W.2d at 614 (quoting *Ingold v. Phoenix Assur. Co.*, 52 S.E.2d 366, 370 (N.C. 1949)). Once a party makes an effective tender of an amount due on an instrument to the holder of that instrument, the obligation of the party to pay interest after the date of tender is discharged. Tenn. Code Ann. § 47-3-603(c) (1996).

Even though Dr. Smith had already been approved for a loan when he called the Futrises, he did not have access to the funds nor was the bank required to loan him the funds at that time. In order to receive the loan money, Dr. Smith was still required to meet certain conditions, including signing and returning a commitment letter and paying a commitment fee of $700. There is some dispute as to the exact date on which Dr. Smith fulfilled these requirements. Dr. Smith testified that he signed and returned the commitment letter and wrote a check to the bank for the $700

commitment fee on June 4th. However, the bank used Dr. Smith's check to purchase a cashier's check dated June 7, 1993, and used this cashier's check to pay the commitment fee. Nevertheless, Dr. Smith's receiving the loan was contingent on his fulfilling certain requirements, specifically returning the commitment letter and paying the commitment fee. These acts were completed no earlier than June 4th.

Thus, at the time of Dr. Smith's call to the Futrises on June 1, 1993, he was neither ready nor able to produce the amount due.

> A mere offer to pay does not constitute a valid tender; the law requires that the tenderer have the money present and ready, and produce and actually offer it to the other party. Tender implies the physical act of offering the money or thing to be tendered, but this cannot rest in implication alone. The law requires an actual, present, physical offer; it is not satisfied by a mere spoken offer to pay . . . A tender cannot be made of funds which are not the debtor's to tender and in which he has then no property.

74 Am. Jur. 2d *Tender* § 7 (1974). Dr. Smith's receipt of the loan money was contingent on his payment of the commitment fee and meeting other conditions enumerated by the lender, acts not completed until after the call to the Futrises. ***See Farnsworth v. Howard***, 41 Tenn. 215 (Tenn. 1860) ("[In order for a tender to be effective, the amount due] must actually be present, and capable of immediate delivery, if the purchaser were willing to receive it. . . . [I]t is not sufficient, if it . . .can be borrowed and procured in five minutes, or being a bank check it be not actually drawn.") Although Dr. Smith later completed his loan commitment, he failed to take any subsequent action which may have constituted an effective tender, such as paying the money into court or into a separate account until the dispute was resolved. ***See Johnson***, 715 S.W.2d at 614. Nor did the Smiths take any action to keep the alleged tender open after the Futrises' refusal. In order to be a valid and effective tender of money, the party who makes it must show that since the refusal to accept the money, he has been ready and willing to pay the amount due. *Johnson*, 715 S.W.2d at 614. By doing so, the party keeps the tender open and may therefore benefit from Tennessee Code Annotated Section 47-3-603(c), which provides that a party's obligation to pay interest on an amount due is discharged after an effective tender. Tenn. Code Ann. § 47-3-603(c) (1996).

Instead, the Smiths "retained the use of" the sum they admit would be due in order to prepay the note. *Johnson*, 714 S.W.2d at 614 (quoting ***Haun v. Guaranty Security Insurance Co.***, 453 S.W.2d 84, 99-100 (Tenn. App. 1969)). Dr. Smith ceased making monthly note payments to the Futrises after they refused to accept prepayment. He made no payments on the loan until the trial court ordered him in April 1996 to pay into a separate account the total amount of past due monthly payments from June 1, 1993 - March 1996. In 1998, upon learning of the Futrises' intent to appeal its judgment, the court ordered Dr. Smith to pay the Futrises $71,891.16, the amount in monthly payments past due as of December 1998, and to continue to pay monthly payments of $1,089.26 until the resolution of the case. Although ordered by the trial court to pay these amounts, the record reflects no occasion since the trial court's order on which the Smiths attempted a tender of the total

amount that they perceive is due under the note. ***See Johnson***, 715 S.W.2d at 613. Therefore, the Smiths have not made an effective tender of the prepayment amount. Consequently, the provision of Tennessee Code Annotated § 47-3-603(c) discharging a party's obligation to pay interest from the date of an effective valid tender, was never triggered. Accordingly, the trial court's holding that the Smiths made an effective tender of the prepayment amount must be reversed.

Last, the Futrises argue that the trial court erred in finding that Feltus owed no duty to them. They argue that Feltus, by volunteering to prepare the closing documents in the transaction, undertook a duty to all the parties involved to exercise due care that the note accorded with the contract, a duty he breached by including a prepayment clause in the note when the contract was silent on the issue. In the alternative, the Futrises contend that Feltus's inclusion of the prepayment clause in the note constituted negligent misrepresentation or fraud because they relied on Feltus's representation that the note would be prepared in accordance with the contract. They maintain that Feltus, by agreeing to prepare the closing documents, tacitly represented that the documents would be prepared "properly" in accordance with the terms of the contract, without a prepayment clause. The Futrises contend they justifiably relied, to their detriment, on Feltus's implicit representation.

In order to establish negligence under Tennessee law, the plaintiff must prove that the defendant owed a duty to the plaintiff, the defendant breached that duty, and there was injury to the plaintiff proximately caused by the defendant's breach of duty. ***Dooley v. Everett***, 805 S.W.2d 380, 383 (Tenn. Ct. App. 1990). Generally, an attorney is "not liable for negligence to parties who are not [his] clients and [who] are not in privity of contract" with him. ***Stinson v. Brand***, 738 S.W.2d 186, 190 (Tenn. 1987). Under limited circumstances, an attorney may be liable to a non-client, including an adverse party, in a situation in which the attorney was so involved in the transaction as to be representing multiple parties, in a situation in which the attorney charges or intends to charge all the parties involved in the transaction, and in a case of negligent misrepresentation, such as where an attorney negligently supplies erroneous information in the course of a business transaction upon which the non-client justifiably and foreseeably relies. ***See Robinson v. Omer***, 952 S.W.2d 423, 427 (Tenn. 1997); ***Collins v. Binkley***, 750 S.W.2d 737, 739 (Tenn. 1988) (although it was undisputed that the attorney was employed by the seller, there was evidence that the attorney knew the purchasers would rely on him); ***Stinson***, 738 S.W.2d at 190-91(asserting that the purchaser's attorney was so involved in the transaction as to be representing more than one party and could be held liable to vendors).

In this case, however, it is undisputed that the Futrises hired the Fishers to represent them in the sale of the property to the Smiths. The Fishers represented the Futrises throughout the contract negotiations. The Futrises acknowledged that they never instructed the Fishers to stop representing them. Although the Fishers contend that they had withdrawn from representing the Futrises by the time of the closing, the Fishers never formally informed the Futrises of their withdrawal. Morever, Dr. Futris testified that he never had any conversations with Feltus about the closing documents and that, had any problems arisen, he and his wife would have consulted the Fishers. There is no evidence that the Fishers informed Feltus or the Smiths that they had withdrawn from representing the Futrises. Rather, the Futrises simply chose not to have their lawyers actively participate in the

-9-

closing because of the conflict in the Fishers' schedule. Feltus testified that he volunteered to prepare the closing documents for the transaction but believed that the Fishers continued to represent the Futrises in the transaction. Feltus neither charged the Futrises for his services nor did the Futrises offer to pay him for his services. Under these circumstances, we find no error in the trial court's finding that Feltus did not undertake a duty to the Futrises and did not represent the Futrises.

The Futrises argue that Feltus's inclusion of the prepayment clause constituted negligent misrepresentation. However, there is no evidence that Feltus was aware that the Futrises were relying on him in his preparation of the closing documents, or that the Futrises actually relied on Feltus. *See Collins*, 750 S.W.2d at 739. The Futrises cite no case in which liability was imposed in a situation in which both parties to the transaction were represented by attorneys. Consequently, we affirm the trial court's finding that Feltus is not liable to the Futrises for any damages from the inclusion of a right of prepayment in the promissory note.

In sum, we find that the promissory note, referenced in the contract, grants the Smiths the right to prepayment and is not inconsistent with the contract, since the contract is silent on the issue of prepayment. Therefore, we affirm the trial court's finding that the Smiths had the right to prepay the note. We find that the Smiths did not make an effective tender on June 1, 1993, since they were not ready or able to pay the amount due on that date. Since fulfilling the requirements for the loan and being approved for the loan for the prepayment amount, the Smiths made no tender of the prepayment amount. Rather, they retained use of the money and ceased making monthly note payments. Therefore, no effective tender was made on June 1, 1993 or thereafter. Consequently, the trial court's finding that the Smiths made an effective tender of payment of the prepayment amount of the note must be reversed. The cause is remanded for the trial court to determine the amount due from the Smiths to the Futrises. We affirm the trial court's finding that Feltus did not undertake to represent the Futrises and did not owe a duty to them to make certain that the note did not contain a right of prepayment. Likewise, we affirm the trial court's finding that Feltus is not liable for negligent misrepresentation to the Futrises.

The decision of the trial court is affirmed in part and reversed in part, as set forth above. We remand this case to the trial court for further proceedings consistent with this Opinion. Costs are taxed equally to the Appellants, Steve C. Futris, Zoe Futris and Steve C. Futris D.D.S., PA., and their surety, and Appellees, Michael A. Smith and Rene A. Smith, and their surety, for which execution may issue if necessary.

---

HOLLY K. LILLARD, JUDGE